# The Brunswick and Balke Company *versus* Hoover et al.

1. There is no principle of law better settled in Pennsylvania than that a sale and delivery of personal property, with an agreement that the owner-ship shall remain in the vendor until the purchase-money is paid, enables creditors of the vendee to seize and sell the same for the payment of his debts.

2. A. agreed with B. that he would furnish him with four billiard tables, to be paid for in instalments, said payments to be secured by a lease and the property to remain in A. until final settlement. The tables were delivered and a lease and notes executed as provided in said agreement. The tables were subsequently levied upon and sold by creditors of B. A. brought tres-pass against said creditors and the sheriff: *Held*, that defendants were not trespassers; that the agreement between A. and B. was a sale of the tables upon a credit with a stipulation that payment should be secured by a lease, and that while said contract was good between the parties it was worthless as to creditors.

3. Rowe *v.* Sharp, 1 P. F. Smith 27, distinguished, and Stadtfield *v.* Hunts-man, 11 Norris 53, followed.

October 21st 1880. Before SHARSWOOD, C. J., MERCUR, GOR-DON PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas of *Venango county :* Of October and November Term 1880, No. 180.

Trespass by John M. Brunswick and others, trading as the J. M. Brunswick & Balke Co., against C. M. Hoover, J. H. Windsor and John W. Windsor.

On the 28th of January 1878, the plaintiff company by their agent, H. F. Corbin, entered into the following contract :

Oil City, Pa., January 28th 1878.

Andrew E. Russell has this day ordered of The J. M. Bruns-wick & Balke Co., through H. F. Corbin, agent, subject, however, to the approval of The J. M. Brunswick & Balke Co., four (4) carom tables : style * * * (here follows description of tables, &c.) Price ($1650.) sixteen hundred and fifty dollars. Five old tables at $375. Terms ($375) three hundred and seventy-five dollars, cash, balance in twelve payments of $75 each, payable in the twelve following consecutive months, with interest at the rate of —— —— —— per annum. Payment to be secured by first lease and fire insurance on said tables. It is understood that the title to the property described in this contract shall remain with The J. M. Brunswick & Balke Co. until the notes and chattel lease are fully executed by the purchaser, and that under no circumstances shall any claim be made as owner until the settlement is so completed.

Tables to be shipped by A. & G. W. R. R. to Oil City, " will write" when ready, and the freight payable by the purchaser. Set-tlement to be made on delivery of tables at office of express com-pany, Oil City, Pa.

THE J. M. BRUNSWICK & BALKE CO., [SEAL.]
Per H. F. CORBIN, Agent. [SEAL.]

[Brunswick and Balke Co. v. Hoover.]

The tables were duly forwarded to Oil City, and on February 19th 1878, Russell paid the freight therefor and removed the tables to his billiard rooms. The following agreement was then entered into:

" This agreement, made and entered into this 19th day of February 1878, by and between The J. M. Brunswick & Balke Co., parties of the first part, and A. E. Russell, of Oil City, of the second part: Witnesseth, That the parties of the first part have leased, and do hereby lease to the said party of the second part, all and singular the goods, chattels and personal property mentioned and described in the following schedule (here follows description), for the term of twelve months from the 19th of February to the 19th of February 1879, for the sum of $967, with interest (in addition to the sum of $375, which has this day been paid as rent, the receipt of which is hereby acknowledged by the parties of the first part), payable in twelve payments of $80.58 each, to wit: The first note falling due on March 19th 1878, and the remaining eleven notes on the 19th day of each consecutive month thereafter.

" And the said parties of the first part covenant with the said party of the second part, that they have good right to lease said goods, chattels and personal property in manner aforesaid, and that they will suffer and permit said party of the second part (he keeping all covenants on his part as hereinafter contained), to possess and enjoy said goods, chattels and personal property without hindrance or molestation from them, or any person claiming by, from or under them.

" And the said party of the second part covenants with the said parties of the first part, to hire said goods, chattels and personal property, and to pay the rent therefor as aforesaid ; that he will not injure, misuse or deface said property, ordinary wear, fire and other unavoidable casualties excepted. Also, that he will not assign this lease, nor keep said property in any place other than at Windsor block in the town of Oil City, county of Venango, and state of Pennsylvania; also, that he will keep said property insured in an amount to be approved of by the said parties of the first part, to wit: in the sum of $967, and the loss, if any, payable to the parties of the first part, for the amount of rent which may remain due for the use of said property. The sum received by said parties of the first part as insurance, over and above the sum which may remain due as rent, shall be refunded to the said party of the second part.

" Provided, however, and it is further agreed that if the rent shall remain unpaid ten days after the same shall become due and payable as aforesaid, or if said party of the second part shall assign his lease, or shall injure, misuse or deface any portion of said property, or shall keep said property in any place other than that designated

in his covenant aforesaid, or shall fail to keep said property insured in manner aforesaid, then his lease shall thereupon expire and terminate, by virtue of this express stipulation therein, and the parties of the first part may, at any time thereafter, enter in and upon the premises where said property is kept, stored or in use, and the same have and possess as of their former estate, and all payments of rent which shall have been made by the said party of the second part, previous to the breach of any of the conditions, covenants and agreements aforesaid, shall be forfeited to said parties of the first part.

" And the parties of the first part covenant and agree that, upon the payment of the rent in manner aforesaid by the party of the second part, they will give to said party of the second part a good and sufficient bill of sale of said goods, chattels and personal property.

" And it is understood and agreed between the parties hereto, that the stipulations and agreements aforesaid, are to apply to, and bind the heirs, executors and administrators of the respective parties."

The cash alluded to in the above lease was paid by Russell, and the notes drawn. On May 28th 1878, J. H. and J. W. Windsor obtained a judgment against Russell, a writ of fieri facias was issued, and Hoover, the sheriff, levied on the tables and sold them to the Windsors. The company then brought this suit.

The defendants claimed that the lease and the other papers above recited were but one transaction, and should be construed together, and that they constituted a sale.

The plaintiffs contended that the tables were held under the lease, and that the other papers were preliminary and were all merged in the lease, but if they were all construed together, they constituted a bailment.

The court, Taylor, P. J., inter alia, charged :

" After certain preliminary arrangements were made between the parties, certain negotiations looking forward to a final sale, on the 28th of January 1878, a paper was executed which, in our opinion, states the contract between these parties, when it was submitted to the plaintiffs in the suit, and approved by them. That it was done is evidenced by the fact that, under the contract the possession of the property was changed. The billiard tables and fixtures were sent, in pursuance of this contract, to Oil City. This contract, in our opinion, is the contract between the parties, although it provides upon its face for certain matters to be performed thereafter, to wit: The execution of a lease which the plaintiffs here claim was the final contract between the parties. We cannot agree with them in that ; we think that this was the contract between the parties, and that the lease was executed in pursuance of this contract therefor, as well as the delivery of the possession

[Brunswick and Balke Co. v. Hoover.]

of the property. That being so, we instruct you, that under the papers in this case, as the parties have chosen to make this a question of law for the court—we instruct you, that under the papers in this case, this was a conditional sale, and that the title to the property passed at the time of its delivery in Oil City, and the consummation of the contract by the delivery of the property and the execution of the lease therefor; the title to the property passed, so far as creditors were concerned. * * * Under the papers, then, we instruct you—and under the evidence in the case—that the title to this property passed to Russell, so far as creditors of Russell were concerned, upon the delivery of the property and the execution of this paper, called a lease, and it was subject to be levied upon in his possession by the creditors of Russell, and the defendants having levied upon it as the property of Russell and sold it as his property, plaintiff cannot recover in this action. They are not trespassers. Your verdict will be for the defendants."

Verdict and judgment for defendants. Plaintiffs then took this writ and alleged that the court erred, inter alia, in the above portion of the charge.

*Wm. McNair*, for plaintiffs in error.—The paper of January 28th 1878, provides that the title to the property shall remain with the plaintiffs until the notes and lease are executed by Russell, and under no circumstances shall any claim be made as owner until the settlement is completed, the settlement to be made at the express office, Oil City. The settlement was made at Oil City, the terms of the lease fixed and executed by Russell, and it was the final act of the parties, and the other then became *functus officio*. The word "lease" in the original paper had, unquestionably, a well-understood meaning in the trade, and shows that a bailment for use was contemplated, and that no title was to pass, and that the lease and terms were to be fixed before delivery of possession to Russell. No title to the property of any kind passed, and if lost in transitu it would have been plaintiff's loss. It is not a sale either absolute or conditional.

The agreements in the following cases were held to be bailments: Henry v. Patterson, 7 P. F. Smith 351; Enlow v. Klein, 29 Id. 488; Becker v. Smith, 9 Id. 470; and we cannot comprehend why a different construction should be put upon the agreements in this case. There is no analogy between this case and Martin v. Mathiot, 14 S. & R. 214, which was a conditional sale simply and purely, and our case does not come within the definition of a conditional sale as given in Rose v. Story, 1 Barr 190; but said case supports the plaintiffs' theory.

*Dodd & Lee*, for defendants in error.—The whole question is one of intention to be deduced from written contracts. The parties

stated their intention too clearly for mistake when they contracted for a sale of the goods with a lease as security, and carried that contract into execution. The case comes clearly within the principle laid down by ROGERS, J., in Rose *v.* Story, 1 Barr 190, and affirmed in Euwer *v.* Van Giesen, 6 W. N. C. 363. If the vendor and vendee agree that the possession shall pass to the vendee, but the property remain in the vendor until the purchase-money is paid, such agreement, as respects creditors and the sheriff, is fraudulent. The lease, standing by itself, does not constitute a bailment. It differs from the lease in the case of Rowe *v.* Sharp, in that no provision is made for the return of the property at the end of the term. The obligation to return the property is an essential quality to the bailment. " A delivery of chattels upon a sale made on condition that the title shall pass on the payment of the purchase-money at a future day, is something more than a bailment; it gives the buyer a conditional title:" Krause *v.* Commonwealth, 12 Norris 418.

Mr. Justice PAXSON delivered the opinion of the court, November 8th 1880.

In the recent case of Stadtfeld *v.* Huntsman, 11 Norris 53, we endeavored to point out with some care the distinction between a conditional sale and a bailment, and the line of cases commencing with Clow *v.* Woods, 5 S. & R. 275, and ending with Enlow *v.* Klein, 29 P. F. Smith 488, was considered and commented upon. We need not repeat what was there said.

The case in hand comes precisely within the ruling of Stadtfeld *v.* Huntsman. The transaction was a conditional sale. The attempt to disguise it under the cloak of a bailment was too clumsy to have the merit of being clever. The contract of January 28th 1878 was a sale of the billiard tables upon a credit, with a stipulation that payment should be secured by a lease of the tables and an insurance thereon. When the tables were delivered the subsequent agreement of 22d of February 1878 was executed. This paper is in form a lease, and it was not denied that it was executed in pursuance of and in strict compliance with the contract of sale of the preceding January. The feeble attempt to prove that the tables were delivered under the lease and not under the contract, will not avail, for the reason, among others, that the two papers must be regarded as one transaction. Taken together they amount to a sale of the billiard tables upon credit accompanied with a lease thereof as a security for the payment of the price. Such a contract, while good between the parties, will not keep creditors at bay. It is worthless as to them. There is no principle of law better settled in Pennsylvania than that a sale and delivery of personal property, with an agreement that the ownership shall remain in the vendor until the purchase-money is paid,

[Brunswick and Balke Co. v. Hoover.]

enables creditors of the vendee to seize and sell the same for the payment of his debts. It would be a needless labor to cite the numerous cases in which this doctrine has been asserted.

It was urged, however, that the case in hand is upon all fours with Rowe v. Sharp, 1 P. F. Smith 27, and that we cannot affirm this judgment without overruling that case. Rowe v. Sharp, like Enlow v. Klein, was a close case and stands upon the border. It differs from the present one in two important particulars. While in Rowe v. Sharp there was evidence of a sale of the billiard tables by Sharp to Goff a few days prior to the lease, there was no agreement for a lease as security. And again, in Rowe v. Sharp there was an express stipulation for a return of the property at the end of the bailment. This important part of a contract of bailment is wholly omitted in the lease between the parties to this contention. The lessors may re-enter and take possession of the property upon a breach by the lessee of the covenants contained in the lease. But if the lessee fulfils his covenants, that is to say if he pays the several instalments as they mature, the lessors cannot reclaim the property, nor is the lessee bound to restore it after the bailment is over.

There is not a single element of a bailment in this transaction. It is immaterial what the parties call it; the law pays little heed to the label; it looks beneath and examines the nature and character of the contract between the parties.

Judgment affirmed.