---

## S. G. V. Co., Appellant, *v.* S. G. V. Co.

*Corporations — Holding company — Separate entity — Right of creditors—Equity—Names.*

Where one corporation conducts its own business through the instrumentality of another and in its name, the capital invested therein by the former cannot be treated as a loan to the latter against the rights of third parties. In such a case equity looks at the substance of the transaction, and will not permit a loss to be shifted to innocent parties, because of the name under which the business was done or the manner of doing it.

Argued March 4, 1919. Appeal, No. 177, Jan. T., 1919, by plaintiff, from decree of C. P. Berks Co., No. 1, 134 Equity Docket, 1914, dismissing exceptions to master's report in case of The S. G. V. Company v. The S. G. V. Company. Before Brown, C. J., Stewart, Moschzisker, Frazer, Walling and Kephart, JJ. Affirmed.

Bill in equity for a receiver of an insolvent corporation.

The case was referred to Stephen M. Meredith, Esq. Exceptions to his report were dismissed by the court. Endlich, P. J., filed an opinion. See 10 Berks Co. L. J. 217.

*Errors assigned* were dismissing exceptions to master's report.

*Joseph M. Gazzam* and *Cyrus G. Derr,* with them *Knox & Dooling,* for appellant.—The Delaware corporation and the Pennsylvania corporation were at all times and are distinct entities: Point Bridge Co. v. Pittsburgh & West End Ry. Co., 230 Pa. 289; Com. v. Monongahela Bridge Co., 216 Pa. 108.

*Thos. I. Snyder,* of *Snyder, Zieber & Snyder,* for appellee.—The claim of the Delaware corporation was properly disallowed on the ground that from the time of the incorporation of the Delaware company (the appellant) in May, 1911, until the appointment of the receiver for the Pennsylvania corporation (the defendant) in September, 1914, the Pennsylvania corporation was at all times so controlled and its affairs so conducted by the Delaware corporation as to make it merely an instrumentality, conduit, or adjunct of the Delaware corporation through which the Delaware corporation was transacting its own business in the City of Reading, that the assets nominally in the name of the Pennsylvania corporation were in fact purchased by and owned by the Delaware corporation, that the business of the manufacture and sale of automobiles at Reading was not even nominally conducted by the Pennsylvania corporation, but was in every particular directly managed, controlled, and conducted by the board of directors of the Delaware corporation at their monthly meetings held in New York, and that to allow the Delaware company to share in the proceeds of the assets now in court for distribution, in fact to take the greater portion thereof, against bona fide creditors of the business so conducted, managed and controlled by the claimant company itself, would work the greatest fraud upon such creditors: Montgomery Web Co. v. Dienelt, 133 Pa. 585; Penna. Knitting Mills of Reading v. Bibb Mfg. Co., 12 Pa. Superior Ct. 346; Ken-

dall v. Klapperthal Co., 202 Pa. 596; Colonial Trust Co.
v. Montello Brick Works, 172 Fed. 310; In re Water-
town Paper Co., 169 Fed. 252; Gay v. Hudson River
Electric Power Co., 187 Fed. 12; Brown v. Penna. Canal
Co., 229 Fed. 444.

OPINION BY MR. JUSTICE WALLING, March 24, 1919:

This is an appeal from a decree of distribution of the
assets of an insolvent corporation.   In 1907 the Acme
Motor Car Company was chartered as a Pennsylvania
corporation, with principal offices at Reading, and there-
after engaged in the manufacture of the S. G. V. auto-
mobile.   It was practically a one man corporation; all
of its capital stock, amounting to $250,000, was owned by
one J. H. Sternbergh.   In May, 1911, the S. G. V. Com-
pany was chartered as a Delaware corporation with large
powers, including the manufacture of and traffic in
motor vehicles and the holding of stock of other corpora-
tions and, so far as local laws would permit, the trans-
action of business in the name of other corporate or indi-
vidual persons.   Its immediate object was the acquisi-
tion of the stock, property and business of the Acme
Motor Car Company, which it promptly accomplished
and continued the business under the same corporate
name until July, 1911, when it was duly changed to "The
S. G. V. Co.," under which the same business was con-
tinued until 1914, when, by reason of insolvency, a re-
ceiver was appointed therefor.   The Delaware corpora-
tion has a capital stock of $400,000, and at the inception
paid Sternbergh $70,500 for the stock, etc., of the Penn-
sylvania corporation, and $20,000 for advance rent of
the real estate occupied by it at Reading.   The Pennsyl-
vania company continued ostensibly as a separate corpo-
ration; held annual meetings at which directors were
elected, who transacted practically no business, and no
other meetings were held except when the name was
changed.   The entire business of the Pennsylvania cor-
poration was under the control and management of the

Delaware company whose board of directors held monthly meetings in New York for that purpose; at which salaries and prices were fixed, finances arranged and all other necessary business transacted. The directors and officers of the Pennsylvania company were also directors and officers of the Delaware company. In the establishment and conduct of the business the latter company furnished about $147,000, for which it took the former company's notes on the basis of loans. These financial transactions were made on the orders of the directors of the Delaware company in which the directors of the Pennsylvania company as such took no part. To facilitate the business the Delaware company kept a bank account at Reading, but held no meetings in this State, and never engaged in any other enterprise. During the progress of the business debts for merchandise were contracted in the name of the Pennsylvania company to the amount of approximately $91,000. The receiver's account showed a balance of some $40,000; to make distribution of which a master was appointed, before whom the S. G. V. Company of Delaware, claiming as a creditor, presented its notes for the $147,000, and interest. The master, after an exhaustive consideration, directed distribution of the fund among the merchandise creditors and rejected the claim above mentioned on the ground that in reality the business was that of the Delaware company, of which the Pennsylvania company was a mere instrumentality or adjunct. The court below, after careful deliberation, adopted the master's conclusion and ordered distribution accordingly; from which the S. G. V. Company of Delaware, who was plaintiff in the suit where the receiver was appointed and also a claimant, brought this appeal.

The facts found by the master, as in part outlined above, are supported by the evidence and justify the decree. True, the Pennsylvania corporation continued as a separate entity notwithstanding the fact that its stock was all held by the Delaware company (Point Bridge Co.

v. Pittsburgh & West End Co., 230 Pa. 289; Com. v. Monongahela Bridge Co., 216 Pa. 108; Monongahela Bridge Co. v. Pittsburgh, etc., Traction Co., 196 Pa. 25; 10 Cyc. 1277); but equity looks at the substance of the transaction and where one corporation conducts its own business through the instrumentality of another and in its name, the capital invested therein by the former cannot be treated as a loan to the latter as against the rights of third parties. In other words, one who invests money in his own business cannot in case of failure shift the loss to innocent parties because of the name under which the business was done or the manner of doing it. It is well stated by Judge ENDLICH, in Kendall v. Klapperthal Co., 202 Pa. 596, 607, affirmed by this court, that equity looks to the substance of the transaction, not to its mere form or color, and while "a corporation does not lose its legally distinct and separate personality by reason of the ownership of the bulk or the whole of its stock by another,......nor by its joining hands with another in a common enterprise. But it is well understood that for purposes of equity, courts will look behind that artificial personality, and if need be, ignore it altogether and deal with the individuals who constitute the corporation." In the present case, the master finds "that the Delaware corporation did at all times so direct and control the Pennsylvania corporation as to make it merely an instrumentality or adjunct of the former"; and the court below properly concludes that, "When the Delaware corporation put its money into the Pennsylvania corporation, it put it into its own enterprise, as owner of the Pennsylvania corporation and business, not into another's enterprise by way of loan as a creditor dealing with a debtor. What it chose to call these supplies of money is of no serious moment. The law pays little heed to the label parties put upon their transactions: Brunswick v. Hoover, 95 Pa. 508, 513." Under such circumstances the controlling corporation cannot share as a creditor in the assets of the insolvent subsidiary com-

pany. Any other rule would defeat justice and open the door to fraud. This principle is often applied in bankruptcy cases in the federal courts. See In re Watertown Paper Co., 169 Fed. 252, 255; Colonial Trust Co. v. Montello Brick Works, 172 Fed. 310, 312; Hunter v. Baker Motor Vehicle Company, 225 Fed. 1006, 1016, 1017; Brown v. Pennsylvania Canal Co., 229 Fed. 444, affirmed in Pennsylvania Canal Co. v. Brown, 235 Fed. 669; and see also Day v. Postal Telegraph Company, 66 Md. 354.

We base our decision upon the ground above stated, as did the court below, without reference to the right of the Delaware corporation to maintain its action in this State.

The decree is affirmed at the costs of appellant.