## NEW YORK TRUST CO. v. ISLAND OIL & TRANSPORT CORPORATION et al.

## ISLAND OIL & TRANSPORT CORPORATION'S RECEIVERS v. ISLAND OIL MARKETING CORPORATION'S RECEIVERS.

### No. 183.

Circuit Court of Appeals, Second Circuit.
March 7, 1932.

Martin Conboy, of New York City (Martin Conboy and David Asch, both of New York City, of counsel), for appellants Oil Transport Company and Sun Oil Corporation, Creditors of Island Oil Marketing Corporation.

Chadbourne, Hunt, Jaeckel & Brown, of New York City (William M. Chadbourne, Howard H. Brown, Alfred H. Phillips, all of New York City, of counsel), for receivers of Island Oil and Transport Corporation.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This appeal seeks a review of an order confirming the report of the special master allowing the claims of the Oil Transport Company and the Sun Oil Corporation in participation with other creditors of the Island Oil & Transport Corporation against the assets in the name of the Island Oil Marketing Corporation and its receivers. The creditors of the Transport Corporation and the Marketing Corporation are to share in pari passu.

The same persons were appointed receivers, on March 20 and 21, 1922, for both the Island Oil & Transport Corporation and the Island Oil Marketing Corporation. A special master passed upon the respective claims of ownership to the moneys and assets which came into the possession and control of the receivers of the two companies. On April 15, 1927, the receivers of the transport company filed a claim to all the moneys and property in possession of themselves as receivers of the marketing company. The transport company was incorporated under the laws of Virginia; the marketing company was organized in Delaware, and was authorized to do business in New York state. Subsidiary corporations of the transport company were organized to hold leases to oil lands in Mexico. All the capital stock of the Mexican subsidiaries and the marketing company was owned by the transport company. The marketing company was organized for the sole purpose of marketing oil products from the Mexican properties and to manage the operations in Mexico and buy supplies. After marketing the oil, it made deposits in its account in New York City. It paid the cost of operation and other sales expenses out of this account.

The claim of the appellant, Oil Transport Company resulted from nonpayment of freight charges under a charter party entered into with the marketing company. A secondary liability was assumed by the transport company and the Massachusetts Oil Refining Company, both guaranteeing performance by the marketing company. The claim of the Sun Oil Corporation was also for freight charges under a charter party, likewise guaranteed by the transport company and the Massachusetts company.

At one time the transport company did the purchasing and selling necessary in the operation of its business, and kept all accounts, banking and otherwise, but since June, 1919, the date of its creation, the marketing company has attended to these incidents of the enterprise. Indeed, it was an instrumentality created for the purpose of purchasing and selling and otherwise acting as fiscal agent for the transport company. The method of accounting followed by the marketing company indicates that it did not derive any benefit from the transfer of the cash and accounts receivable, and that the entire beneficial interest remained in the transport company; the marketing company acted merely as the agent either for the transport company or the Mexican subsidiaries, without beneficial interest to itself, although such assets were formally placed in its name. The accountant testified that the monthly balances between the marketing and the transport companies in all cases represented the difference between the amounts entered in the books of the marketing company as due the Mexican companies and the total assets standing on the books in its name.

The appellants claim that the funds in the hands of the marketing company at the time of the receivership and those having since come into the hands of the receivers, are trust funds for the benefit of the creditors who contracted directly with the marketing company, and that it assumed the direct obligations and must pay out of its assets; that the funds in question are its assets for the purpose of paying debts. The stock of the Mexican companies, while owned by the transport company, was pledged as security under the trust indenture to secure gold notes. The marketing company was found by the master to have been organized for, and did act as fiscal agent of, the transport company. The court below approved this finding, and allowed the creditors of the transport and marketing companies to share in pari passu in the general assets.

The funds in question arose (a) from moneys received from accounts receivable of the transport company which were carried in the name of the marketing company at the

time the receivers were appointed; and (b) the revenues received from postreceivership operations, of which revenues the proceeds from the sale of oil from the Mexican properties constituted the larger portion.

It is significant that the appellants insisted upon, and received, the guaranty of the transport company to the payments due under these charter parties. The notes taken by the Oil Transport Company in connection with the charter party were indorsed by the Island Oil & Transport Company. Moreover, the marketing company's current assets were used for the payment of the obligations incurred by the transport company. There is no evidence of any expressed or even implied representations to the appellants that the marketing company owned all the proceeds of the sale of oil as its separate estate. The reason for the organization of the marketing company is given as a means to avoid heavy taxation which would have resulted from qualifying the transport company to do business in New York state. Therefore, to establish this fiscal or distributing agent, the receipts were credited on the books of the marketing company. We held in New York Trust Co. v. Island Oil & Transport Corp. (Ex parte Compania Petrolera Capuchinas), 34 F.(2d) 655, that the entries were not intended by the parties to represent genuine debits and credits as between the transport company and the Mexican companies, and that the real beneficiary of these entries, representing the profits derived from the operation of the Mexican companies, was the transport company. It is not the property of the marketing company. There was no relationship disclosed between the marketing company and the Mexican companies which justifies the suggestion that the marketing company in any way is entitled to the realizable basic cost of oil as produced at the wells, plus the profit derived therefrom at sale. It was such items as cash and accounts receivable which were placed in the name of the marketing company, but title to the stock of the Mexican companies, whose properties produced the oil and who were entitled to the profits by way of dividends, was never transferred to the marketing company; that title remained in the transport company.

The contracts between the marketing company and the Mexican companies provided that the marketing company should act as purchasing and sales agent for the Mexican companies, and for such services an annual commission of $100, plus all expenses, was stipulated. Thus it appears clearly that the marketing company handled the transactions intrusted to it merely as an agent, without having any interest of its own in such transactions, or, therefore, in the assets resulting therefrom. The method of accounting employed under the agency contracts answers the contention that the marketing company had any interest other than that of an agent, or that the relation of debtor and creditor existed.

Nor do we find any representation made to the marketing company's creditors that it in any way pledged the credit of these assets so that the marketing company's creditors might, by the principle of estoppel, have a right prior to the creditors of the transport company to share in the assets now held by the receivers. There was nothing to indicate separate ownership in the marketing company of the current assets of the transport company, or that third persons extended credit to the marketing company in reliance upon misrepresentation. While it is true that the marketing company made contracts in its own name and that third parties extended credit on the strength of such contracts, the creditors who are here appealing did not rely upon any such representation, but apparently knew of the interest of the transport company and insisted upon and received its guaranty. The situation justified these appellants dealing with the marketing company and believing that it, as agent, had authority to bind the general estate of the transport company which proved to be the fact. Both companies were separate legal entities; creditors might well hold both— the transport company as principal and the marketing company as agent. The transport company could not be held merely because it was a stockholder of all the stock of the marketing company. The creditors here contracted with the marketing company as if the transport company was not liable, except on its guaranty. In re Watertown Paper Co., 169 F. 252 (C. C. A. 2); New York Trust Co. v. Carpenter, 250 F. 668 (C. C. A. 6). As a principal, it is liable here because of the recognition by it of the relationship of principal and agent. It is established by the conduct of the two corporations and their bookkeeping entries, as well as by the method of sales and distribution of profits. Admitting that the two corporations are separate and distinct, the appellants, dealing with them as such, can have no preference. To disregard the corporate entity would not advance the creditors of the marketing company to a position of priority over the creditors of the transport company.

If a subsidiary is a mere instrumentality and its business is really that of the parent company, a loan by the parent to the subsidiary will be subordinated to the claims of creditors of the subsidiary. Baker Motor Vehicle Co. v. Hunter, 238 F. 894 (C. C. A. 2); S. G. V. Co. v. S. G. V. Co., 264 Pa. 265, 107 A. 721. The reason is that the proprietor of a business cannot lend money to the enterprise and thus curtail the rights of creditors by sharing in pari passu with them, and such loan is regarded as a contribution to the capital of the business. The cases referred to are illustrative of representation by a subsidiary to creditors of assets constituting a complete business unit, as a visibly separate estate belonging to the subsidiary entirely distinct from any property which such creditors could have reason to assume belonged to the parent company. In the instant case, the relation of debtor and creditor did not exist between the marketing company and the transport company. There was no attempt on the part of the transport company to create a separate estate in the marketing company by means of loans or investment of capital. The relation was that of principal and agent. One representation made to the marketing company's creditors was that the agent had authority to bind the estate of its principal and this was coupled with the truthful representation to the transport company's creditors that the assets belonged to that company. The creditors dealt with them on such a basis.

The order below, granting equal rights to the appellants with the other creditors of the transport company to share in the assets held by the receivers, was properly entered.

Order affirmed.