### In re KAMENS QUALITY MARKETS, Inc.
#### No. 16926.

District Court, E. D. Pennsylvania.
Dec. 18, 1934.

On Reargument March 19, 1935.

Harry Shapiro, of Philadelphia, Pa., for bankrupt.

Felix & Felix, of Philadelphia, Pa., for petitioners.

Walter G. Dugger, of Philadelphia, Pa., for Norman E. Horton, receiver.

David W. Amram, of Philadelphia, Pa., referee.

DICKINSON, District Judge.

This began as a reclamation proceeding. The petitioner asked to have awarded to it a sedan automobile which it claimed to be its property and hence no part of the bankruptcy assets. The referee dismissed its petition. What we have before us is a review of this order of dismissal. The cause has been presented to us as raising the question of whether a writing is on its face a bailment or whether it is a contract of sale.. The question really before us is the one of whether a claimant to property has proven title thereto. There are two possible fact situations. The owner of property may .grant to another the use of it for a limited time without in fact or form parting with the ownership title. This is a "bailment." He may, on the other hand, sell the property to another parting with the possession but retaining the title as security for the purchase price. This is called a "conditional sale." It is a parting with possession under an agreement to sell when the purchase price is paid or what is really a sale on credit. Whether the transaction in question is one or the other is a question of fact. If it is a real bailment, he may, when he has the right to its return, reclaim his property wherever found as the doctrine of market overt is no part of the law of Pennsylvania. If it is not a bailment but a sale upon payment of the purchase price, he may enforce his agreement against his vendee, but under the Statute of Elizabeth the agreement is a·legal fraud upon the creditors of the vendee against whom it cannot be enforced. We are disregarding the effect of the conditional sale and other like acts. The question of whether the transaction is one or the other turns upon what it really is, not upon what the vendor or vendee or both of them may say it is. There is no added .efficacy given to their say-so by expressing it in a writing. Assume a sale to have been made on credit and the vendor and vendee for the purpose of giving the vendor security for the payment of the purchase price to agree to call it a bailment and to put their agreement in the written form of an undoubted bailment; this surely would not change the fact. This is what these so-called bailment leases are. We repeat what has been already said, these agreements are enforceable by one party against the other but against creditors they are nullities.

There is much confusion of thought in the profession on the subject of these "bailment leases." As already said, if the transaction was a sale, its character is not changed by calling it a bailment. This must be clear to any one. Notwithstanding this, the question is always presented, as it is to us, as if it were: "Is this writing an agreement of sale or a bailment"? What is the nature of the writing is only of secondary importance when it is of any. Putting these abstractions in the concrete will show this. The trustee has possession of the property in question as part of the bankruptcy assets. Possession, of personal property, is evidence of title. The trustee has thus at least prima facie title. The petitioner claims the property to belong to it and seeks to reclaim it. Surely the referee would not be justified in ordering the trustee to deliver up the property to the claimant without proof of its title. The burden

of showing title is in consequence on the claimant. It offered no evidence whatever. All it did was to offer a paper signed by the claimant and the bankrupt which sets forth (we will assume) that the property belongs to the claimant. This declaration, although in writing and signed, is no evidence of title. All it proves is that the claimant and the bankrupt have said that ownership is in the claimant. Change the agreement to a letter or other statement of fact and this becomes clear. As against the bankrupt his acknowledgment would be evidentiary, but as against any one else it is mere hearsay. Even if evidentiary it would by no means be conclusive or even convincing. We have said the writing is in any event of only secondary importance. We have said that the possession of the trustee is prima facie evidence of title. It is necessary for the claimant to overcome this. This he may be able to do by showing that the possession of the trustee was derived from the bankrupt, and that the claimant gave him possession under a bailment of which the writing is evidence. Here is where the character of the writing becomes of value. If when properly construed it is found not to be a bailment but a conditional sale, the proof of title fails although up to that time the title was clearly in the claimant. This is the reason that stress is laid upon the writing. If it is not a bailment, but a conveyance of sale title, the claim fails. It does not follow by any means, however, that if the paper is in form an undoubted bailment that the claimant has made good his title. He has offered evidence which, if credited, may produce the conviction of truth, but evidence is in itself not proof. The question is the truth. It usually becomes did the claimant in truth sell the property to the bankrupt retaining the title as security for the payment of the price? If he did, a formal agreement of bailment will not save him. As evidence, the writing itself, although its legal meaning may be a bailment, may be persuasive otherwise because of fact expressions in it. Most bailment leases are so. This is no exception to the rule.

Without taking the time and space to analyze it fully, there is provision in it for the retaking possession of the property. Then follows this very suggestive and significant provision that the bailor may "resell" the property. Why "resell" if he had not before sold? This is more than a "Chops and Tomato Sauce" question.

What is of importance is that the claimant has no right to a reclamation order without a finding of his ownership of the property.

The learned referee, who is also a fact finder of long and wide experience, has found the fact against the claimant. This ends all question, but if more is required we add our judgment of agreement with the referee. There is no evidence in the cause which convinces us of the title of the claimant to this property. Far from it.

There is nothing in the ruling made by the referee inconsistent with the numerous cases to which we have been referred in the very able brief submitted by counsel for the claimant. General Motors v. Hartman, 114 Pa. Super. 544, 174 A. 795, may be taken as typical. The Pennsylvania Superior Court ruled that the agreement before the court was an agreement of bailment, not a sale. This might well be true of any agreement. The court further found as a fact that the transaction then under review was in truth a bailment. This might likewise be true of any transaction. It may, however, be likewise true of another transaction that it was in fact a sale not a bailment.

We do not see that the Act of May 25, 1933, P. L. 1059 (75 PS Pa. § 38), has any application.

As the learned referee has well observed, it is high time that the question raised should be deemed settled. It, however, seems to be one of those questions which will not "down."

The petition for review is denied, and the order of the referee approved, affirmed, and confirmed.

### Sur Motion for Reargument.

Leave was given to file supplemental briefs, which have been received, and the cause ripe for a ruling.

This discussion takes us to first principles. The controversy is over the ownership of an automobile sedan. We start with the fact that the receiver is in possession. Possession of a personal chattel is evidence of title and is prima facie ownership. The claimant must in consequence overcome this by proof of its title. At the former hearing it was without the support of any evidence of title. This has now been supplied by a stipulation that up to the time of the transaction next mentioned the title was in the claimant. The claimant parted with the possession. Under the rugged common-sense principles of

what we know as the common law, one who has all the indicia of ownership of personal property may be dealt with as if he were the owner. The law of Pennsylvania, however, does not recognize the market overt doctrine. An owner out of possession may follow his property wherever found. The question however then becomes, not whether his title is good as against the person to whom he parted with the possession, but whether it is good against the person in possession. The distinction is vital. An owner, for illustration, may sell, delivering possession to the purchaser but retaining the title to secure the payment of the purchase money. He could enforce his title against his vendee but may not be able to enforce it against an execution creditor of his vendee. The latter is the question before us as presented by the receiver. The owner, on the other hand, may put out his property on hire giving to his bailee the possession and use of the property for a term without losing his right to reclaim it in whosever possession it may be. This is the case before us as presented by the claimant. Obviously the determining question is one of fact. Was the transaction a sale or a bailment? The vendor and vendee as between themselves may agree to call a sale a bailment and if they do as between them it is a bailment. Obviously again, however, they cannot as against others make a bailment of a sale by calling it such even if they put their say-so in writing and cast it in the form of a so-called lease. It is the overlooking of this distinction which has kept these "bailment lease" transactions in what is up to date an endless controversy. It is high time the law was settled.

The very capable counsel for the claimant in an admirably developed argument has rested his cause on a number of earlier cases. There the question was discussed as one of the construction of the writing. In many of them, as in almost all transactions of the kind, there was beyond doubt a sale disguised as a bailment. The writing was attacked by picking flaws in it as, for instance, the absence of a covenant to return the property. The practical consequence was that every hole picked was covered up in the next writing which came before the Courts. The process was then repeated by finding new flaws which were in turn corrected. The only practical result was to lengthen the writing. Finally no further holes could be picked and the courts have met the question on the true basis of a fact finding. Was the transaction in fact a sale or a bailment?

Here is another distinction often overlooked but enlightening. A writing may be interpreted to discover its meaning. It may also have in it what may be called internal evidence of a fact. The "rent" reserved, for illustration, might be inordinately high as compensation for the hire of the property and be so adjusted in respect to the term that when the total rental exactly equaled the sale price plus interest for deferred payments, the "rental" ceased and the bailee retained the property. Whether the "rental" was high or low would not affect the construction given to the contract, but the feature referred to would be strong evidence that the transaction was in truth a sale.

The discussion in the cases of such features of the writing are really directed to the evidentiary value of this internal evidence but are often misread as interpretations of the contract. The owner of property which had a sales value of $1,000 and a rental value of $25 per month might make a "bailment lease" for a year at $100 per month with provision that when $300 had been paid the bailee need pay no more rent for the rest of the term. This would be construed as a bailment, but if the agreement was that when the bailee had paid $1,000, with interest on deferred payments, the rent should cease for all time and the bailee be given a bill of sale for the property, there would be in this strong evidence that the transaction was in fact a sale. Any transaction may be in fact a sale and so found no matter in what form it may be cast. The point attempted to be made, as before stated, is that two persons may have a transaction evidenced by a writing which as between them will be construed as a "bailment lease," and yet the same transaction found in favor of an execution creditor to be in fact a sale and part of the evidence sustaining the finding be disclosed by the writing itself.

The learned referee properly required the claimant to prove its title. This it attempted to do by proof that it had parted with possession under a "bailment lease" transaction.

The referee has found as a fact that the transaction although cast in the form of a "bailment lease," and whether as between bailor and bailee such or not, was as against an execution creditor a sale trans-

action. He has vindicated his conclusions with a characteristically full and clear discussion which leaves nothing to be added.

We are merely repeating ourselves, but it is evident from the additional briefs submitted that the view the referee has taken and which we have attempted to present has not been made clear to counsel for the claimant. This is doubtless due to the simplicity of the thought. It is so obviously true that its truth is overlooked. In the concrete it is this:

A is in possession of property under a claim of ownership. B, who may or may not be the owner, seeks to reclaim the property as belonging to him. He submits a so called bailment lease from B to C. It is obvious this is no evidence as against A of title in B. There may be another type of case. B, admitted to have been the owner of property at the time of the bailment, makes one to A or to A's predecessor in title. The bailment is evidence of title against A.

The case of Kindig v. Wertz (Pa. Super.) 176 A. 769, is of the latter type. In the first type it is not in point. There the action was based upon the title being in the claimant when the bailment lease was made. The question presented was one arising out of the contract of bailment. The controversy was between the parties to the bailment. As between them it is controlling and the question becomes wholly one of the construction of the writing. If, however, the rights of the person in possession rise higher than those of the bailee, the question is not one of the construction of the contract but whether the bailor has parted with his title. He has parted with it if he sold it. Whether he sold it is a fact. As between the bailor and bailee the writing controls, but as between the bailor and a third party the fact controls. The seller, as we have several times said, cannot change a sale into a bailment, as against a third party, by calling it a bailment or by entering into a bailment agreement with another. Whether it is a sale or bailment is a fact finding to be made under all the evidence. The question is not one of the construction of the agreement alone.

The learned referee has made this distinction so clear that it would be a waste of words to dwell upon it. He has reached the fact conclusion that the transaction was a sale. With this finding we are in hearty accord. He has supported this finding with a discussion which is convincing, and to that we leave it.

The order heretofore made dismissing the petition for review, etc., is confirmed and re-entered.