## In re GUERTLER.

No. 18875.

District Court, E. D. Pennsylvania.

Dec. 1, 1935.

Petition for Review Denied Dec. 30, 1935.

Charles Green, of Philadelphia, Pa., for bankrupt.

J. Lawrence Wetherill, of Philadelphia, Pa., for petitioner.

Joseph Sternberger, of Philadelphia, Pa., for trustee.

LEWIS, Referee.

This was a hearing on petition and answer in reclamation proceedings for an automobile in the possession of the trustee in bankruptcy, alleged to be the subject of a bailment lease entered into between Webster K. Wetherill and the bankrupt.

The facts are that the bankrupt, being the owner of a Graham automobile, received a notice from the Guy A. Willey Motor Company offering to make an exchange of his old car for another and better Graham car in their possession. This was followed a day or two later by a personal visit to the bankrupt by a representative of the Willey Company, who brought with him for inspection the car proposed to be offered in exchange. The bankrupt expressed his willingness to trade in his old car, but said the difficulty was that he did not have the money necessary to take the car offered. The Willey representative said that he would arrange the financing for him, and subsequently brought down to the bankrupt the bailment lease in question, which the bankrupt signed. The Willey representative signed as a subscribing witness, but Mr. Wetherill was not present when the bankrupt signed, and the latter testified that he could not remember whether Mr. Wetherill's signature was on the lease at the time.

Mr. Wetherill is regularly engaged in the business of financing the purchase of automobiles in transactions wherein automobile dealers in Philadelphia solicit business with prospective purchasers who are themselves unable financially to complete a purchase or a trade-in. Mr. Wetherill testified that, having been notified by the Guy E. Willey Motor Company that he was called upon to finance one of their cars, he or one of his subordinates went to the company's office, inspected the car in question, took its number, subsequently signed the lease in question as lessor, after its execution by the bankrupt, and then bought the car in his own name from the company. He offered in evidence his paid and canceled check to the company for the purchase price of the car, together with bill of sale made out to him for the car in the purchase price of $586, less credit of $186, or $400, with notation on the invoice: Car "delivered to George Guertler" (the bankrupt). It appeared that Mr. Wetherill does not necessarily have any contact with the purchaser to whom the company delivers the car which Mr. Wetherill is to finance. In the present case, he testified that he doesn't know whether he ever saw Mr. Guertler or not, but said that Mr. Guertler had already executed the lease. This lease called for rentals from the bankrupt in the increased amount of $710.88, less trade-in of old car $186, or net rental of $524.88, payable in eighteen monthly installments of $29.16. There is no prescribed term of letting in the lease, other than such as may be implied from the provision last mentioned, but otherwise there are the customary clauses relating to the return of the automobile at the expiration of the term, that title shall be and remain in the lessor until the terms of the lease have been fulfilled, and with an ultimate right in the lessee to purchase the automobile upon payment of the sum of $1.

Whether a given transaction is a bailment or a conditional sale has long been the subject of judicial consideration, and of some contrariety of judicial expression. Taken by and large, we think the trend is, wherever possible, to favor the transaction as a bailment where there is no other evidence in the case than the writing itself, and the writing clearly reserves title in the lessor, while at the same time affording the lessee the right to become the owner by payment of a given sum, after completing the installments of payments called for in the lease as the consideration for his use and enjoyment of property which he was unable to pay for in a lump sum at the time of the execution of the writing. General Motors Acceptance Corporation v. Hartman, 114 Pa. Super. 544, 548, 174 A. 795. On the other hand, the rule is otherwise where there is other evidence in the case than the writing itself, from which the truth appears undubitably to be that the intention of the parties was there should be a present sale of the property, the "lessor" retaining title merely as security for the purchase price. In such case, the fact that the writing is couched in approved bail-

ment form will be unavailing, and must give way to the true intention of the parties. Per Dickinson, J., in Re Heintz-Merkle & Co. (D.C.) 1 F.Supp. 531, 22 A.B.R.(N.S.) 315, and in Re Kamens Quality Markets, Inc. (D.C.) 10 F.Supp. 263, 27 A.B.R.(N.S.) 184.

In the present case, there is other evidence than the writing itself from which the inference is irresistible that the transaction here was an outright sale ab initio, initiated by the Guy A. Willey Motor Company, and carried to completion through the instrumentality of Mr. Wetherill.

We have seen that, in the beginning, the Guy A. Willey Motor Company approached the bankrupt with a solicitation that he enter into the transaction in question. It was that company that brought the car to the bankrupt for his inspection. It was that company which named the price for which they would deliver the car to him. It was that company which undertook to finance his purchase. It was that company which brought him the lease to sign, which he signed. It was to that company that he delivered his old car as a "trade-in" at a price fixed and agreed on by the company. It was to him that the company delivered the new car. It was in his name as owner that the certificate of title issued by the State Department of Revenue was made out, with a notation thereof that the car was subject to an "encumbrance" in favor of Mr. Wetherill. The bankrupt never saw Mr. Wetherill, and Mr. Wetherill testified that he does not know that he ever saw the bankrupt. Mr. Wetherill testified that the bankrupt signed the lease brought to him by the company's agent before he (Mr. Wetherill) had bought the car from the company. Mr. Wetherill testified that he never drove the car, or took it out, and it is clear from all the testimony that it was never intended that the car should in any manner pass into his actual possession or control. The price which Mr. Wetherill paid the company for the car was $400, as is shown by the bill rendered to him by the company. On the other hand, the price which Mr. Wetherill charged the bankrupt for the car was $524.88, as is shown by the "bailment lease" offered in evidence. In other words, Mr. Wetherill charged the bankrupt $124.88 more for the car than the bankrupt would have paid the Guy E. Willey Motor Company if he had had sufficient funds in hand to complete the purchase himself from the company. We do not mention this latter fact by way of any disparagement of Mr. Wetherill's charge for financing the transaction. It may have been a perfectly approved financing charge. We mention it, along with the other facts, merely to show that the purchase was solicited and set in motion by the Guy E. Willey Motor Company, and carried through by that company, up to the culminating point where, instead of the bankrupt paying the company $400 in installments, the company got its $400 at once from Mr. Wetherill, and then prepared a "lease" whereby the bankrupt became obligated to pay Mr. Wetherill the increased sum of $524.88 in installments.

The case relied on by counsel for Mr. Wetherill (General Motors Acceptance Corporation v. Hartman, 114 Pa.Super. 544, 174 A. 795) is plainly distinguishable on its facts. We have already cited that case as authority for the proposition that, where there is nothing before the court but the written agreement of itself, the court will lean in favor of a bailment rather than a conditional sale. In that case, the only question was the construction to be given a transaction in writing between a dealer in automobiles and a purchaser unable at the time to pay the purchase price for the car in full, followed by an assignment of the writing to a third party, and followed by a levy on the car by a creditor of the bailee. It was held that the execution defendant did not, under the writing, have title to the car, and that judgment for the assignee of the title should be affirmed. We think the instant case is ruled on its facts by Commercial Banking Corporation v. Meade, 104 Pa. Super. 447, 159 A. 180, 182. In that case a dealer in automobiles entered into a written contract with a purchaser for a new automobile, in which the purchaser was credited with a certain allowance for his old car traded-in, the balance of the purchase price to be financed by the Commercial Banking Corporation. The latter company was given a bill of sale by the dealer, but never received the car, and never had possession of it; delivery and possession being wholly given to the purchaser. Subsequently, a creditor of the purchaser obtained a judgment against the purchaser, issued execution, and purchased the car at sheriff's sale. The Commercial Banking Corporation thereupon issued a writ of replevin against the purchaser at sheriff's sale, and the trial judge gave binding instructions in its favor. On motion for judgment n. o. v., judgment

was reversed in an opinion by Broomall, J., who held that all three papers (i. e., the order of purchase, the bill of sale, and the bailment lease) constituted but one transaction, and clearly showed that the real nature of the transaction was not that of bailor and bailee, but that of debtor and creditor, and that the purchaser at the sheriff's sale, being a bona fide creditor of the purchaser of the car, acquired a good title to the car as against the Commercial Banking Corporation. On appeal, the superior court, in a Per Curiam, "affirmed [the judgment] on the opinion of Judge Broomall."

We think the present case is ruled, on its law, as well as its facts, by Root v. Republic Acceptance Corporation, 279 Pa. 55, 123 A. 650, where Mr. Justice Schaffer said: "The complicated dealings between many of those trafficking in and loaning money on automobiles have reached a point where the courts must strip transactions of their pretences and look at them as they really are, with the camouflage of papers giving a similitude of the passing of title removed, or they will be dealing with fictions instead of facts. Those who buy and sell, bail and loan money on motor vehicles must be given to understand that the realities of their transactions will be sought for by the courts; they will look through the screen of paper titles to ascertain what was the real situation."

In that case, the facts were that a dealer in automobiles borrowed money from the Republic Acceptance Corporation, which was engaged in the business of loaning money on such vehicles, and gave to the corporation bills of sale and storage receipts for certain automobiles in its possession, and simultaneously executed a bailment lease of the same to the corporation. There was no delivery of possession to the corporation of the automobiles, the dealer retaining the possession. Subsequently, the corporation obtained judgment against the dealer, on judgment notes not connected with the automobiles covered by the bills of sale and storage receipts, and levied an execution and took possession, inter alia, of the automobiles covered by the bills of sale and storage receipts. On the same day, the corporation released its levy, and took possession of the same automobiles under enabling clauses in the bailment lease. The dealer subsequently was adjudicated an involuntary bankrupt, and a trustee was appointed, who brought trover and conversion against the corporation to recover the value of the automobiles. The corporation defended on the ground that it had a title under the bailment lease which was good as against the creditors of the dealers and as against the trustee in bankruptcy. There was a verdict and judgment for the trustee in bankruptcy. On appeal, in affirming the judgment, Mr. Justice Schaffer said: "However much appellant desired and endeavored to disguise the transaction between it and (the dealer) by the dressing of the papers which were executed—the bill of sale, the storage receipt, and the bailment lease—the real transaction so far as third persons were concerned was that of a loan by defendant to the Averill Company, and the actual relation between them was not that of bailor and bailee, but debtor and creditor."

So here. The automobile sought to be reclaimed is in the possession of the trustee in bankruptcy. Such trustee, as to all property in his custody, is vested with all rights, remedies, and powers of a creditor holding an execution lien. Bankruptcy Act, § 47a (2), as amended (11 U.S.C.A. § 75(a)(2); Bailey v. Baker Ice Mach. Co., 239 U.S. 268, 36 S.Ct. 50, 60 L.Ed. 275; In re Scott Book & Art Store (D.C.) 12 F.Supp. 18. He is vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt. Id. § 70a, as amended (11 U.S.C.A. § 110(a). As we have said, the transaction in this case was not, in our opinion, a bailment, but a sale, and therefore title to the automobile was in the bankrupt as of the date he was adjudged a bankrupt.

Accordingly, the petition for reclamation is dismissed.

On Petition for Review.

DICKINSON, District Judge.

The delay in disposing of this cause has been due to the disability of the judge who heard the argument.

The petition for review raises the question, which seemingly will not down, of whether a given transaction was a sale or a bailment. It is to be regretted that the law of transactions, such as the instant one, has not been settled. That the question here raised recurs so often is due to the present-day system of buying on credit and to the insistence of money lenders and vendors upon holding the thing sold as security for the purchase

price. What happens is that what is really a chattel mortgage is asked for and given. There is a long-established policy of the law in favor of execution creditors and innocent purchasers, to refuse to give effect to secret liens against personal property in the possession of the owner. To escape the consequences of this law, the lienholder changes the evidence of the transaction from the form of a pledge to the form of a bailment and assumes that a change of forms and names has wrought a change in things. It seems that nothing will drive from the minds of vendors the right to a vendor's lien for unpaid purchase money. The large investments in these credit transactions has induced the Legislature to so far yield to the pressure as to pass the Conditional Sales Act, but this does not serve the purpose sought. Devices without number have been resorted to. One is that employed here. The vendor company does not extend credit to the purchaser, but it provides a financing company which does. The resourceful counsel for the claimant here has supported the plan by an argument as good as any which could be presented. The learned referee has put his finger upon the weak spot in it by his finding that the transaction was in fact a loan of money not a bailment. The reasons given in support of this finding are beyond the reach of successful attack. The words of Mr. Justice Schaffer in Root v. Republic Acceptance Corp., 279 Pa. 55, 123 A. 650, quoted by the referee, should put an end to all these futile attempts to change things by merely changing names.

The petition for a review is denied, the findings of the referee approved, and the order made affirmed and confirmed.