## Harry Cramer, Inc. v. Morris

*Prowell, Naugle & Perry*, for plaintiff.

*Compton, Handler, Berman & Boswell*, for defendant.

BOWMAN, J., September 20, 1965.—Two independent but related matters are before us for disposition.

The one involves a petition by defendant to open a confessed judgment. The other involves a petition by Keystone Trust Company (Keystone) to obtain possession of a car in the custody of the Sheriff of Dauphin County. They will both be disposed of by this opinion.

On October 27, 1964, judgment was entered in the amount of $500 by virtue of a judgment note given by defendant as security for the payment of a 1956 Oldsmobile sedan purchased from plaintiff (Cramer). On the same day, Cramer had the Sheriff of Dauphin County levy upon a 1957 Oldsmobile sedan owned by defendant. Keystone holds an encumbrance on the said 1957 Oldsmobile which was duly noted on the title in accordance with the provisions of The Vehicle Code. Thereafter, on November 21, 1964, defendant filed a petition for a rule to show cause why the judgment entered by Cramer should not be opened and defendant allowed to make a defense thereto. In response to defendant's petition, Cramer filed an answer raising certain questions of fact. Depositions were taken, briefs filed and argument heard by the court en banc in both proceedings.

In determining whether to open a judgment, the court has the power to take into consideration both the testimony taken on deposition and the pleadings: Lytle v. Walters, 184 Pa. Superior Ct. 246 (1957).

From an examination thereof, the following facts appear: On November 1, 1963, defendant purchased a 1956 Oldsmobile sedan from Cramer. The sale was secured by a conditional sales agreement, which provided that a security interest would attach to the vehicle financed until all sums due thereunder were paid. Incident thereto, defendant executed a judgment note for $500, payable at $20 per week. As such, the sale was governed by the Motor Vehicle Sales Finance Act.[1]

---

[1] Act of June 28, 1947, P. L. 1110, 69 PS §601, et seq.

On April 10, 1964, because of a default by defendant, Cramer repossessed the said 1956 Oldsmobile. At the time of repossession, defendant had made payments in the total amount of $220. On August 17, 1964, Cramer sent to defendant at 437 Wood Street, Steelton, a registered notice that if the automobile was not redeemed within 15 days, it would be sold at a private sale. This letter was returned to Cramer "unclaimed". Defendant had changed his place of residence and admits he did not give notice thereof to Cramer, but claims that Cramer knew of his new address, since one of his employes lived on the same street.

An officer of Cramer testified that in October 1964, the 1956 Oldsmobile was sold for $100 to Robert Hilbush, an employe of Cramer, who traded it back in a few days on another vehicle. The title was never transferred.

As previously mentioned, judgment was then confessed and a 1957 Oldsmobile was levied upon by the sheriff. Cramer issued execution for $356.32. This amount was made up as follows: $280.00 balance owing on note; $76.32 balance due on $85.47 repair bill; $99.50 storage @ 50¢ per day; $15.90 tune-up and parts (repairs on repossessed automobile); less a credit of $100 for value of repossessed car.

A petition to open judgment is governed by equitable principles and addressed to the sound discretion of the court: Duquesne Light Company v. Pittsburgh Railways Company, 400 Pa. 565 (1960); Berger v. Pittsburgh Auto Equipment Company, 387 Pa. 61 (1956); Foster v. Nixon, 194 Pa. Superior Ct. 572 (1961).

A mere conflict of evidence is not enough. The petition to open and the supporting depositions must set forth a meritorious defense in specific and clear terms (Liberty National Bank of Pittston v. Degillio, 406 Pa. 127 (1962)), and also establish the existence of equitable considerations which impress the court with

the need for relief: Lened Homes, Inc. v. Philadelphia Department of Licenses and Inspections, 386 Pa. 50 (1956).

In support of the petition to open the judgment, defendant sets forth several arguments. First, it is asserted that Cramer did not comply with section 26[2] of the Motor Vehicle Sales Finance Act, as amended, supra, which provides:

". . . the seller or holder shall not have the right to bring an action or proceeding against the buyer for a deficiency, as provided in section twenty-seven hereof, unless there shall have been a public or private sale of the repossessed motor vehicle and collateral security."

In the depositions of Harry Cramer, president of plaintiff, the following testimony was given:

"Q. Could you tell me why, if you sold this car to Robert Hilbush, there was no transfer of title?

"A. We didn't have the title, Robert Hilbush was dissatisfied with the car and he traded it back in a few days and we sold him something else.

"Q. Up to this date there has been no full sale of the car?

"A. That is correct."

Stanford Cramer, general manager of plaintiff, when questioned as to why the title was not transferred to Mr. Hilbush, stated: "We didn't have the title to the automobile". However, during the second deposition, defendant's counsel, in questioning Stanford Cramer, elicited the following:

"Q. When you note an encumbrance on the title, who gets the title?

"A. The encumbrance holder would get the title.

"Q. Would it be safe to say that at all times while Mr. Morris had possession of the car, you had possession of the title certificate?

---

[2] 69 PS §626.

"A. Yes, that is correct."

The testimony of Cramer's officers as to the sale of the repossessed automobile is not of a clear and convincing nature. Since this judgment, in any event, must be opened for other reasons to be discussed, it is our opinion that the factual question of whether a sale ever took place as required by the Motor Vehicle Sales Finance Act should be framed as an issue to be determined on proceedings upon the opened judgment.

Defendant next contends that the value of the repossessed car was $500, instead of the $100 for which he was given credit. While normally an oath against an oath is not sufficient to open a judgment (Messick v. Mumma, 192 Pa. Superior Ct. 639 (1960)), in the present case, defendant has a statutory right to a determination of the car's value.

Under section 27[3] of the Motor Vehicle Sales Finance Act, as amended, ". . . the buyer may have the reasonable value of the motor vehicle at the time of resale, determined in any action . . . to recover the deficiency". In interpreting this section with regard to a petition to open judgment, the Superior Court, in Alliance Discount Corp. v. Shaw, 195 Pa. Superior Ct. 601 (1961), stated, at page 605:

"The plaintiff contends that the defendants have no right to have the reasonable value of the automobile, on resale, determined until an action or proceeding is brought to recover the deficiency. When the plaintiff entered judgment on the note it had several avenues to pursue. It could have used the judgment as a means of recovering the entire debt, or it could, as it did, repossess and sell the automobile and utilize the judgment to recover any deficiency. This intent is indicated as the judgment was not satisfied after the sale. Therefore, the action to recover any deficiency has already been brought and defendant is entitled to have the rea-

[3] 69 PS §627.

sonable value of the automobile at the time of resale determined".

See also Evans v. Allied Discount Co., 199 Pa. Superior Ct. 239 (1962).

The next area of dispute between the parties is whether the judgment note given by defendant covered more than the 1956 Oldsmobile. Cramer claims that defendant orally agreed that the note upon which execution was issued would cover not only the sale of the automobile, but also the repair work to be done to another automobile owned by defendant. Defendant admits liability for a certain amount of repair work, but denies that the note in question was in part given to secure payment of this repair bill.

Generally speaking, a judgment note may properly be given to evidence and secure payment of the total sum of indebtedness arising out of more than one transaction between the parties to such a note. Here, however, Cramer admits said note for $500 was given incident to the purchase of a car from it for a like amount. The installment sales contract under which said automobile was sold provides for installment payments over a period of time to equate the principal indebtedness and the face amount of the note. Thus, the issue of altering the terms of a written contract by parol evidence is raised, as is the weight of any evidence that Cramer could present in contradiction to the facts it already asserts and admits. These issues, in our opinion, warrant opening the judgment, such issues to be determined upon further proceedings. . . .

For all of the foregoing reasons, the rule to show cause why the judgment should not be opened should be made absolute.

This brings us to the next matter to be determined, namely, who is entitled to possession of the 1957 Oldsmobile which is presently in the custody of the sheriff? Keystone seeks possession of the car, on the basis that

under the terms of its bailment lease with Morris, the right of possession is now in the bank. Cramer, on the other hand, asserts that (1) Keystone has a lien on the car but has no valid bailment lease which would entitle it to possession, and (2) if there was a valid bailment lease, the bank's right of possession arose after the car was already in the custody of the sheriff upon execution of the writ.

From a review of the depositions and pleadings, we find the following facts: On April 3, 1964, Morris signed an agreement denominated "bailment lease" with Keystone. The total rental was for $600, payable $50 per month. Sometime thereafter, Keystone had an encumbrance noted on the title to the car in accordance with the provisions of The Vehicle Code. It is admitted in the depositions of Edward C. Sykes, an official of Keystone, that the bank did not own or have possession of the car at any time.

Pennsylvania courts have long held to the doctrine that when goods are delivered under a bailment lease, the lessor will be protected against the execution creditors of the bailee, even though title will pass upon payment of the full amount of rental stipulated therein. See Commercial Investment Trust Company v. Minon, 104 F. 2d 765 (1939); 61 A.L.R. 788.

To this general rule, the court, in General Motors Acceptance Corporation v. Hartman, 114 Pa. Superior Ct. 544 (1934), at pages 552-53, pointed out a number of exceptions:

"The cases which sustain the right of a creditor to levy on the claimed article as the property of the judgment debtor usually fall into one of the following classes: (1) Where the written instrument is, on its face and by its terms, a conditional sale rather than a bailment lease, . . . (2) Where a sale has been made and completed, and a lease is entered into only as collateral security for the protection of the unpaid pur-

chase price: . . . (3) Where a sale has been made and completed, and possession delivered, and subsequently the parties attempt to change it into a bailment: . . . (4) Where the lease is attempted to be made by one not in possession of the property leased—as where A sells and delivers a car to B, and the unpaid purchase money is sought to be secured by a *lease* to B from C, who never had possession of the car: . . . (5) Where the owner of personal property borrows money on it and attempts to secure the loan by executing a bill of sale to the lender, and the latter executes a bailment lease back to the owner, without any change of possession: . . ."

Was the transaction in question a true bailment, or essentially a security device? In Root v. Republic Acceptance Corporation, 279 Pa. 55 (1924), the court said at page 57:

"Those who buy and sell, bail and loan money on motor vehicles must be given to understand that the realities of their transactions will be sought for by the courts; they will look through the screen of paper titles to ascertain what was the real situation".

In considering the admission of Keystone that it never owned or had possession of the car, nor had anything to do with its delivery, we are of the opinion that this case falls within the exceptions set forth in the Hartman decision. See Atlantic Finance Corporation v. Kester, 156 Pa. Superior Ct. 128 (1944); Commercial Banking Corporation v. Meade, 104 Pa. Superior Ct. 447 (1932); Bank of Secured Savings v. Rudolph, 83 Pa. Superior Ct. 439 (1924); In Re Guertler, 17 F. Supp. 569 (1935).

In substance, this was a pledge of the automobile to secure money loaned under the guise of a lease. In this manner, Keystone attempted to give credit to Morris without subjecting itself to the claims of creditors by reason of having parted with the possession.

However, the rule in Pennsylvania has always been that a pledge of personal property unaccompanied by a transfer of possession is fraudulent as against subsequent execution creditors of the pledgor: Clow v. Woods, 5 S. & R. 275 (1819); Newman v. Globe Indemnity Co., 275 Pa. 374 (1923); Horten v. Colonial Finance Corporation, 90 Pa. Superior Ct. 460 (1927).

We therefore conclude that Keystone does not have a legal right to possession of the automobile now in the custody of the sheriff under a writ of execution. This is not to say that Keystone is without any rights in the car in question. The notation on the certificate of title of the encumbrance of Keystone was equivalent to the filing requirement under section 9-302 of the Uniform Commercial Code of April 6, 1953, P. L. 3, and as such gave Keystone a perfected security interest in the car: Girard Trust Corn Exchange Bank v. Warren Lepley Ford, Inc. (No. 2), 13 D. & C. 2d 119 (1957). Moreover, Cramer in its brief admits that upon the sale of the vehicle by the sheriff, Keystone's lien has priority over the lien of its judgment.

We have already determined that judgment must be opened, pending determination of the issues framed in the petition to open judgment. Upon the determination of those issues, all or part of the judgment may have to be stricken off.

As execution on the judgment and the sale of the automobile in question must be stayed pending such determinations, we are faced with the practical problem of further storage costs accruing on this automobile, the value of which may be consumed in costs to the detriment of those persons determined to have property interests therein. Under such circumstances, and to possibly avoid accrual of more storage charges, Keystone, having an interest in said automobile, shall be given the right to possession of the 1957 Oldsmobile now in the custody of the sheriff upon executing

and delivering to the sheriff, subject to the approval of court, a redelivery or forthcoming bond in the principal sum of $1,000, conditioned upon redelivery of said property to the sheriff upon his demand.

For the foregoing reasons, we make the following

## ORDER

AND NOW, September 20, 1965, the petition of Robert H. Morris to open judgment entered in the above-captioned proceedings, and the rule to show cause issued thereon, is hereby made absolute, and judgment is opened for the purpose of having a determination made of the following issues:

(1) Did Cramer effect a public or private sale of the 1956 Oldsmobile sedan it had sold under an installment sales contract to and repossessed from Morris upon the latter's default, as required by section 26 of the Motor Vehicle Sales Finance Act?

(2) Assuming such a bona fide public or private sale, what was the reasonable value of said automobile at the time of said sale?

(3) Was the judgment note upon which Cramer entered judgment and caused execution to issue thereon delivered to it by Morris in consideration of the purchase of the 1956 Oldsmobile, or was it also given to secure payment for repairs upon yet another automobile?

(4) What were the reasonable expenses of Cramer in the retaking and storing of the 1956 Oldsmobile which it repossessed upon default?

The petition of Keystone Trust Company for possession of said automobile and the rule to show cause issued thereon is hereby denied. Keystone Trust Company, however, upon executing and delivering to the Sheriff of Dauphin County, subject to the approval of court, a redelivery or forthcoming bond in the principal sum of $1,000, conditioned upon redelivery

to said sheriff upon his demand, shall be given possession of the automobile now in the custody of the sheriff under the execution heretofore issued in these proceedings.

All other proceedings on the judgment hereby opened and on the execution issued thereon are hereby stayed pending further order of court. Costs to abide determination of the proceedings on the opened judgment.