General Motors Acceptance Corporation v.
Hartman et al., Appellants.

Argued April 18, 1934.

Before Trexler, P. J., Keller, Baldrige, Stadt-
feld, Parker and James, JJ.

*J. Clyde Gilfillan,* and with him *Clarence A. Patter-
son,* of *Gilfillan & Patterson,* for appellant.

*Dan T. R. Dickson,* and with him *William J. Cald-
well* of *Hugus & Caldwell,* for appellee.

Opinion by Keller, J., October 3, 1934:

This is a sheriff's interpleader as to the ownership
of an automobile. The appellant, use plaintiff in a
judgment against Ralph Hartman et al., issued a writ
of fieri facias, under which the sheriff levied on an
Oldsmobile coupe as Hartman's property. The ap-
pellee, General Motors Acceptance Corporation, filed
its claim of title and ownership, resulting in the
award of an issue in sheriff's interpleader proceed-
ings.

At the trial the lower court directed a verdict for
the execution creditor, this appellant. The jury fixed
the value of the automobile at $650. The court subse-
quently entered judgment non obstante veredicto for
the claimant. This appeal followed.

The relevant facts are not in dispute.

Rogers Motor Company is a dealer in automobiles in the City of New Castle, Pennsylvania, and handles the Oldsmobile car, which is a product of General Motors Company. · On August 19, 1932, Buick Oldsmobile Pontiac Sales Company of Pittsburgh made a bill of sale for an Oldsmobile coupe serial No. C-19292, motor No. F-311750, being the automobile in suit, to the General Motors Acceptance Corporation and on the same day the General Motors Acceptance Corporation delivered the car to Rogers Motor Company taking from it a 'trust receipt.' No claim of title on the part of the General Motors Acceptance Corporation in this case is based on this 'trust receipt.' Under it, Rogers Motor Company had authority to sell the automobile for cash or dispose of it on bailment lease, with the right in the lessee to purchase it: Com. v. Williams, 93 Pa. Superior Ct. 92; Hoeveler-Stutz Co. v. Cleveland Motor Sales, 92 Pa. Superior Ct. 425.

Ralph Hartman wanted to buy an Oldsmobile coupe, and was satisfied to take the one in the possession of Rogers Motor Company. The cash sale price was $1,005, but Hartman did not have the money to pay for it. He could pay $50 cash, and furnish oil,—in which he dealt,—to the amount of $305, making together $355, and leaving $650 to be raised some other way. Rogers Motor Company, accordingly, prepared a bailment lease of the automobile to Hartman on September 6, 1932, (dated September 1, 1932) under which Hartman was recited to have paid $355 as advance rental and agreed to pay rental in monthly instalments of $43 each for eighteen months, beginning October 7, 1932, with the right to purchase the car, after all instalments of rental had been paid, for the further sum of one dollar. The difference between the sum of the rental instalments, $759, and $650, represented interest, insurance and carrying charges. The bailment lease was signed by both parties, and follow-

ing it, possession of the automobile was given Hartman. Rogers Motor Company at the same time executed an assignment of the bailment lease to General Motors Acceptance Corporation and Hartman signed a statement as to his financial worth. Rogers Motor Company also forwarded an application to the Department of Revenue for a certificate of title for the car, with an assignment endorsed thereon to Hartman, and a note made therein of an 'encumbrance' in favor of General Motors Acceptance Corporation of $759.

Before the automobile had been in Hartman's possession thirty days and before the first instalment of rental was due under the bailment lease, it was levied upon by the sheriff under appellant's writ of fieri facias.

A recital of these undisputed facts would seem to justify a directed verdict for the appellee. Possession of the automobile was delivered to Hartman, the execution debtor, following, and pursuant to, his execution of a bailment lease for it, under which title and ownership to the car would not vest in him until he had paid all the instalments of rental provided in the lease and one dollar additional. The lessor had, at the time of such delivery, possession of the car and legal authority to sell it, or dispose of it by bailment lease; and it assigned the lease, together with the title to and ownership of the car, subject to the lease, for a valuable consideration, to the appellee, who made prompt claim for its property following the execution on the appellant's judgment. There was nothing concealed or fraudulent about it. A bailment lease has long been an approved and legal method, in force in this Commonwealth, by which one desiring to purchase an article of personal property, but unable to pay for it at the time, may secure possession of it, with the right to use and enjoy it as long as he pays

the stipulated 'rental,' and the further right to become the absolute owner, on completing the instalment payments called for in the lease, by payment of an additional sum, which may be nominal in amount. The enactment of the Conditional Sales Act of May 12, 1925, P. L. 603, did not affect our established law on this subject, for the provisions of the Uniform Conditional Sales Act in force in other states were changed, in our statute, so as to permit the continuance in force of our law as firmly established in the decisions of our courts of appeal: Stern & Co. v. Paul, 96 Pa. Superior Ct. 112; General Motors Acceptance Corp. v. B. & O. R. R. Co., 97 Pa. Superior Ct. 93; Leitch v. Sanford Motor Truck Co., 279 Pa. 160, 123 A. 658; Anchor Concrete Mach. Co. v. Penna. Brick & Tile Co., 292 Pa. 86, 90, 140 A. 766; Schmidt v. Bader, 284 Pa. 41, 45, 130 A. 259; Mulholland v. Sterling Motor Truck Co., 309 Pa. 590, 592, 164 A. 597. The statement of the Supreme Court in Brown Bros. v. Billington, 163 Pa. 76, 80, 29 A. 904, still remains the law: "The purpose of the parties was to effectuate a sale in the future directly to the bailee, who was to have actual possession in the meantime under a different arrangement, and we gave it our sanction as against creditors of the bailee because of the contract. In other words, although the intent of the parties, and the effect of their agreement, was to vest the title at a future day in the purchaser, he having actual possession in the meantime, yet as the intervening arrangement was upon a valid contract of bailment as between the parties, the title of the bailor was preserved until terminated by compliance with the provision for a sale, at which time that portion of the agreement became operative." See Schmidt v. Bader, supra, p. 45; and Com. v. Motors Mtge. Corp., 297 Pa. 468, 471, 472, 147 A. 98.

What are the circumstances relied on by the appellant, in this case, to bring about a different result?

(1) She claims that the parties, both Hartman and the representative of Rogers Motor Company, had discussed the former's *buying* the car. Of course they had, and if Hartman had had the money to pay for it, he would have *bought* it. But he did not, and there is not a word of evidence to show any willingness or intention on the part of the motor company to sell it to him on *credit*. See Com. v. Overheim, 106 Pa. Superior Ct. 424, 427, 162 A. 475. If he was unable to buy it for cash, the only method considered was a 'bailment lease,' by which, while the purpose was to effectuate a sale in the future, delivery would be made in the meantime to the intending purchaser and possession would be held by him, under a valid contract of bailment, which preserved the rights of the parties, with title in the bailor,—or his assignee—until terminated by compliance with the provision for sale: Brown Bros. v. Billington, supra, p. 80; Schmidt v. Bader, supra, p. 45. Unless Hartman had agreed to execute the bailment lease, Rogers Motor Company would not have delivered possession of the car. But, even if the original intention had been to make a sale, while the contract was still executory they might legally have changed it from one of sale into a bailment, with an alternative of future conversion into sale, on compliance with stipulated conditions: Goss Printing Co. v. Jordan, 171 Pa. 474, 477, 32 A. 1031.

(2) That Rogers Motor Company, or its bookkeeper, for its own convenience, in entering the transaction on its books, may have described it in terms of a sale, and the lease as a 'bill receivable' could not affect either Hartman nor its assignee, General Motors Acceptance Corporation, nor change the bailment into a conditional sale. See Schmidt v. Bader, 284 Pa. 41, 43, 130 A. 259,

(3) Appellant claims that a bill of sale was executed by Rogers Motor Company and delivered to Hartman. The exhibit produced fails to substantiate the claim. It was not signed by Rogers Motor Company, or anyone on their behalf (see p. 66-a) and was nothing more than an unsigned memorandum showing the transaction, including the down payments and instalments to be paid by Hartman for eighteen months, and information needed for the registration of the car. That it was made on a partly printed sales slip form could not change the transaction from a bailment lease to a conditional sale.

(4) Appellant also, no doubt inadvertently, has misstated the letter of transmittal from Rogers Motor Company to General Motors Acceptance Corporation forwarding the lease, etc., making it read "Enclosed find lease and lessee's statement for purchase of new Oldsmobile coupe" etc.; whereas it really reads: "Enclosed find lease and lessee's statement for purchase. New Oldsmobile coupe" etc. The letter clearly refers to the purchase of the *lease* by General Motors Acceptance Corporation, and the words "New Oldsmobile coupe" only identify the subject matter of the lease, title to which, of course, subject to the lease, passed to the assignee: Com. v. Motors Mtge. Corp., 297 Pa. 468, pp. 471, 473, 147 A. 98.

(5) Nor was the oral testimony of the Rogers Motor Company's representative or of Hartman, as to the non-necessity for the return of the car to the lessor, after all instalments of rental had been paid, and the payment of the final dollar in order to pass title to the car, not alleged to have been omitted from the contract through fraud, accident or mistake, admissible to alter the terms of the contract: Gianni v. Russell, 281 Pa. 320, 126 A. 791; Schmidt v. Bader, supra, p. 46; Michael v. Stuber, 73 Pa. Superior Ct. 390, 397. It was not necessary that the bailment con-

tain a specific stipulation to return the car at the expiration of the term: Jones v. Wands, 1 Pa. Superior Ct. 269; but it did so.

(6) The transaction was not affected by the forms used in securing the necessary certificate of title from the Department of Revenue, under the Vehicle Code of May 1, 1929, P. L. 905, Art. II, secs. 201-211 (pp. 913-916), as amended by Act of June 22, 1931, P. L. 751. The forms were prepared and furnished by the Department of Revenue. The Act of 1929 defines 'owner' as including the 'lessee' under a lease (p. 909); and the Act of 1931 substitutes 'applicant' for 'owner' as the person to apply for the certificate. Any money due under the contract, whether lease or conditional sale, is termed a lien or encumbrance in the application as prepared by the Department of Revenue. The purpose of such a certificate has been stated by us in Braham & Co. v. Steinard-Hannon Motor Co., 97 Pa. Superior Ct. 19. It has no effect on the contract executed between the parties.

Appellant relies chiefly on Brunswick & Balke Co. v. Hoover, 95 Pa. 508; Bowser & Co. v. Franklin Mtge. & Inv. Co., 305 Pa. 459, 158 A. 170; Root v. Republic Acceptance Corp., 279 Pa. 55, 123 A. 650; Bank of Secured Savings v. Rudolph, 83 Pa. Superior Ct. 439; Commercial Banking Corp. v. Meade, 104 Pa. Superior Ct. 447, 159 A. 180, and similar cases, but they are all easily distinguishable from this one. The cases which sustain the right of a creditor to levy on the claimed article as the property of the judgment debtor usually fall into one of the following classes: (1) Where the written instrument is, on its face and by its terms, a conditional sale rather than a bailment lease, such as Bowser & Co. v. Franklin Mtge. & Inv. Co., supra; Stadtfeld v. Huntsman, 92 Pa. 53; Ott v. Sweatman, 166 Pa. 217, 31 A. 102. The contract in the present case is, on its face and by its terms, one

of bailment. It leases the automobile to Hartman for a definite term, during which he is to pay rental by the month, and stipulates for the return of the automobile to the lessor at the expiration of the term: Rieker v. Koechling, 4 Pa. Superior Ct. 286. (2) Where a sale has been made and completed, and a lease is entered into only as collateral security for the protection of the unpaid purchase price: Brunswick & Balke Co. v. Hoover, supra; Bowser & Co. v. Franklin Mtge. & Inv. Co., supra; Bank of Secured Savings v. Rudolph, supra; Cooper & Co. v. Whitmer, 18 W. N. C. 376, 6 A. 571. (3) Where a sale has been made and completed, and possession delivered, and subsequently the parties attempt to change it into a bailment: Wagner v. Com., 15 W. N. C. 14; Morgan-Gardner Electric Co. v. Brown, 193 Pa. 351, 44 A. 459; Wire Book Sewing Machine Co. v. Crowell, 19 W. N. C. 55, 57. See Com. v. Deibert, 106 Pa. Superior Ct. 497, 503, 163 A. 68. See, however, Michael v. Stuber, 73 Pa. Superior Ct. 390, as to the right to do this, where rights of creditors are not involved; or have not attached: Schmidt v. Bader, supra. (4) Where the lease is attempted to be made by one not in possession of the property leased—as where A sells and delivers a car to B, and the unpaid purchase money is sought to be secured by a *lease* to B from C, who never had possession of the car: Bank of Secured Savings v. Rudolph, supra; Commercial Banking Corp. v. Meade, supra. See also, Bowersox v. Weigle & Myers, 77 Pa. Superior Ct. 367. (5) Where the owner of personal property borrows money on it and attempts to secure the loan by executing a bill of sale to the lender, and the latter executes a bailment lease back to the owner, without any change of possession: Root v. Republic Acceptance Corp., supra.

None of the artifices, schemes and subterfuges so forcefully criticized in Root v. Republic Acceptance

Corp., as intended to camouflage the real transaction, are here present. The method adopted in this case has long been recognized as valid and legal in this State. Practically the same contract was upheld by us in General Motors Acceptance Corp. v. B. & O. R. R. Co., supra, as a valid bailment lease. An examination and comparison of the two contracts shows no essential difference.

In Leitch v. Sanford Motor Truck Co. which is reported in the same volume of the State Reports as Root v. Republic Acceptance Corp. (see 279 Pa. 55 and 160, respectively), the Supreme Court say, on page 165, relative to such contracts: "If we were to sustain appellant's contention it would seriously interfere with the vast business done throughout the State on bailment leases, and property thus held would be at the peril of the bailors. Our decisions, however, follow a different course, protecting the owner's title as long as he does not knowingly permit the public to be misled."

The case of Bank of Secured Savings v. Rudolph, supra, on which appellant chiefly relies and which the lower court found hard to distinguish, gives us no trouble at all. In that case Leasure, the execution debtor, obtained a motor truck from Manchester Auto & Machine Co. on a *written order of purchase,* with a provision that "the title to the truck shall remain in you [the seller] until purchase price is paid in full." It also provided that the balance of $3,723.34 remaining after a payment of $500 and delivery of two cars taken in trade, valued at $750, should be "covered by lease and 12 notes with Republic Mortgage Company [not the seller, nor person in possession], to be paid off within one year from date of delivery of truck." While it does not appear in the opinion, an examination of the appellant's paper book and record in the case (pp. 47 and 48) shows that the written order was

duly accepted by the Manchester Auto & Machine Co. and thus became a binding contract of conditional sale; and it appears in the case that the lessor, Republic Mortgage Company, under whom the Bank of Secured Savings claimed as assignee, never had possession of the truck, but that it remained continuously in the possession of the buyer after its delivery by Manchester Auto & Machine Co., so that the case falls under both (2) and (4) of the classes cited above.

On careful consideration of the matter we are satisfied that the judgment of the court below was right.

The assignments of error are overruled and the judgment is affirmed.