First National Bank of Emlenton, Appellant, *v.* Emlenton Motor Company (et al., Appellant).

Argued May 4, 1943.   Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Benjamin G. McFate,* with him *William J. McFate,* of *McFate & McFate,* for execution creditor, appellant, No. 225 and appellee No. 226.

*W. W. Stoner,* of *J. M. Stoner & Sons,* for claimant, appellant, No. 226 and appellee No. 225.

OPINION BY KELLER, P. J., September 29, 1943:

The First National Bank of Emlenton, Pa., (hereinafter called the Bank) issued execution on a confessed judgment against Fred C. Pifer, trading as Emlenton Motor Company, (hereinafter called Emlenton) under which the sheriff levied, *inter alia,* on five automobiles in the defendant's garage. Automobile Finance Company (hereinafter called Finance) claimed these automobiles as its property, gave its bond, and took the automobiles, and a sheriff's interpleader issue was framed to try the title to them, in which Finance was named plaintiff, and the Bank, the execution creditor, defendant. The values of the respective cars were agreed upon.

The jury returned a verdict in favor of the claimant, Finance, as to all five cars. The Bank obtained a rule for judgment non obstante veredicto, which the court made absolute as to three cars, and discharged as to the other two. The Bank appealed (No. 225) from the discharge of its rule for judgment non obstante veredicto as to two cars and the judgment entered on the verdict as to them. Finance appealed (No. 226) from the entering of judgment non obstante veredicto for the Bank as to the three cars.

The circumstances attending the possession of the

cars by the debtor, Emlenton, justify their grouping into three classes, which we will call A, B and C.

Class A consisted of two Ford cars which the Ford Motor Company shipped to Emlenton on the agreement of Finance that it would advance the money to pay for them. Finance never had possession of them, but on their arrival, Emlenton, as 'bailee', executed a bailment lease for them to Finance as 'bailor', but no actual delivery or change of possession of the cars was made under it.

Class B consisted of a Mercury demonstrator car, which was owned by W. W. Jeffrey of Oil City. He sold it to Emlenton which paid him for it. Subsequently Emlenton applied to Finance for a loan on this car, which was granted and was 'secured' by the owner, Emlenton, executing and delivering to the lender, Finance, a bailment lease. No change or delivery of possession of the car was made under this lease.

Class C consisted of two Ford cars which had been delivered by Ford Motor Company to Emlenton under conditional sale agreements. These agreements had been duly assigned by Ford Motor Company to Universal Credit Company, which was then financing Emlenton's credit transactions; and the agreements and assignments were duly recorded in the office of the Prothonotary of Venango County. Later, Emlenton made arrangements with Finance to act for it, instead of Universal, in its credit transactions, and pursuant to this arrangement Finance paid Universal the balance due by Emlenton on these two cars, under an agreement that Universal would assign the conditional sale contracts for them to Finance[1]; but for some reason or

---

[1] Mr. Eckert, Pittsburgh Branch Manager of Automobile Finance Company, testified that his company, on payment of the amount due Universal Credit Company was to get an assignment

other the assignments had not been made when the Bank issued execution on its judgment. The Bank, however, through an auditor whom it had placed in Emlenton's office, knew of the transactions, and that Emlenton held these two automobiles under conditional sale contracts, and that Universal's interest in them had been taken over by Finance.

Under this statement of facts, which is not in dispute, we are of opinion that the court below correctly held that the cars in classes A and B were subject to the lien of the Bank's execution, and that the claimant had no such property in them as made them free from the execution creditor's levy. And, on the other hand, that as to the cars in class C, the Bank's execution was subject to the conditional sale contracts and that the rights of the assignee of those contracts had equitably passed to the claimant, which was entitled to enforce them as against the execution creditor.

We said in *General Motors Acceptance Corp. v. Hartman et al.*, 114 Pa. Superior Ct. 544, 552-3, 174 A. 795: "The cases which sustain the right of a creditor to levy on the claimed article as the property of the judgment debtor usually fall into one of the following classes: ...... (2) Where a sale has been made and completed, and a lease is entered into only as collateral security for the protection of the unpaid purchase price [citations omitted]. ...... (4) Where the lease is at-

---

of their right, title and interest in these two cars. "I called Mr. Coll [Butler Branch Manager of Universal Credit Company] ...... and he agreed to give us those papers ...... He told me upon receipt of our check in payment of those two cars that he would assign all right, title and interest that the Universal Credit Company had in those two particular cars over to the Automobile Finance Company." While Mr. Coll denied this, the verdict of the jury in favor of Automobile Finance Company supports Mr. Eckert's version of the facts.

tempted to be made by one not in possession of the property leased—as where A sells and delivers a car to B, and the unpaid purchase money is sought to be secured by a *lease to* B *from* C, who never had possession of the car [citations omitted]. (5) Where the owner of personal property borrows on it and attempts to secure the loan by executing a bill of sale to the lender, and the latter executes a bailment lease back to the owner, without any change of possession [citations omitted]".

The cars included in class A fell within classes (2) and (4) of those enumerated above; and the car in class B fell within class (5) above. The citations which appear on page 553 of 114 Pa. Superior Court Reports fully justify the lower court's action in those respects.

The amendment to the Vehicle Code of 1929, P. L. 905 by the Act of June 27, 1939, P. L. 1135—with special reference to section 203(b)[2]—has no bearing on the case. It could only affect the car in Class B, for that was the only car for which Emlenton had obtained a certificate of title, and that certificate was obtained on May 11, 1939, three months and a half before the effective date of the amendment of 1939. It had no retrospective effect and could not validate an abortive attempt to create a lien. Furthermore, prior to the passing of the amendment, dealers were not required to obtain a certificate of title for any motor vehicle, second hand or new,[3] until they sold it. Hence no duty rested

---

[2] This amendment added the provision: "The certificate of title, when issued by the secretary showing a lien or encumbrance, shall be adequate notice to the Commonwealth, creditors, and purchasers that a lien against the motor vehicle, trailer or semi-trailer exists, and failure to transfer possession of the vehicle, trailer or semi-trailer shall not invalidate said lien or encumbrance."

[3] See Act of June 22, 1931, P. L. 751, sec. 201(b), pp. 753-4.

on any one but a purchaser to inquire into the issuance of a certificate while the cars were in the possession of a dealer. And, in addition, notice of a lien or encumbrance would not warrant a claim of *ownership,* by the holder of the lien or encumbrance, in a *sheriff's* interpleader.

On the other hand, the verdict of the jury established that Emlenton held title to the two cars in class C subject to the conditional sale contracts with the Ford Motor Company, which had been assigned to Universal; and that when Finance paid Universal the amount due by Emlenton on those cars it was done under an arrangement with Universal that Finance should succeed to Universal's title as assignee of the conditional vendor and was not a mere volunteer paying Emlenton's obligation. The attempt to secure the loan further by a bailment lease was futile (see classes (2) and (4) in the *G. M. A. C. v. Hartman* case, supra), but it did not deprive Finance of its equitable rights under the conditional sale contracts.

No money was lent by the Bank to Emlenton on the strength of its ownership of those cars, for it knew that the title to them, so far as levying upon them for Emlenton's debt, was in Universal and that in good conscience Finance had succeeded to Universal's rights in them.

Appeal No. 225—Judgment affirmed.

Appeal No. 226—Judgment affirmed.