## Atlantic Finance Corporation, Appellant, *v.* Kester et al.

Argued October 4, 1944. Before KELLER, P. J., BALD-
RIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Daniel Marcu,* with him *Marcu, Marcu & Marcu,* for
appellant.

*Leonard Michael Propper* and *Price & Propper,* for
appellee, were not heard.

OPINION BY KELLER, P. J., November 15, 1944:

This was a sheriff's interpleader issue, tried before a court without a jury, to determine the ownership of a sedan automobile levied upon by the sheriff on February 25, 1942 as the property of Harry F. Reuter, the defendant in the execution, and claimed by Atlantic Finance Corporation, the appellant herein—hereinafter called Atlantic—as its property.

The sheriff had levied upon the automobile while in the possession of Harry F. Reuter, pursuant to a writ of fieri facias on a judgment obtained by Minnie Kester, the appellee herein, against the said Reuter. Atlantic gave written notice to the sheriff that the automobile levied upon was not the property of the defendant Harry F. Reuter, but belonged to it, the claimant, when the levy was made, and that title was in its name.

The sheriff's rule for an interpleader issue was made absolute. The automobile was appraised at $300; claimant gave bond in the sum of $600, and the automobile was delivered to it by the sheriff.

The procedure with respect to sheriff's interpleaders is governed by the Act of June 22, 1931, P. L. 883, 12 P. S. (1943 P. P.) §2358 et seq. It is limited to cases where tangible goods or chattels have been levied upon by the sheriff under execution process issued out of a court of record and the sheriff has been notified by a claimant that the goods so seized, or any part of them, *belong* to him and not to the defendant in said execution. The claimant is required to file a statement setting forth the source of his title and to give bond conditioned that he will maintain his title to the goods claimed.

In its statement in interpleader the claimant averred that it was the owner of the sedan levied upon under said writ of fieri facias, that said automobile was at all times its property, and was in the possession of the defendant Harry F. Reuter only by virtue of a bail-

ment lease between it, as lessor, and him, as lessee.

At the trial the court found in favor of Minnie Kester, the execution creditor, and against the claimant, for the appraised value of the automobile, on which judgment was entered after dismissal of the claimant's exceptions. Claimant appealed. The judgment will be affirmed.

The stipulation of facts agreed upon by the parties, in lieu of taking testimony at the time, set forth in substance that Sampson Motor Car Company, the owner of said automobile, on August 4, 1937 sold it to Harry F. Reuter, who applied for and obtained a certificate of title the next day, naming First Credit Corporation as holder of an encumbrance in the amount of $763.92. This encumbrance was satisfied on November 2, 1938 by Commercial Banking Corporation paying First Credit Corporation the unpaid balance due, the latter, in turn, assigning its right, title and interest in said automobile to Commercial. To secure its loan Commercial took an assignment from Reuter of the certificate of title, free of encumbrances, dated November 7, 1938, and the same day reassigned it to Reuter, who on November 9, 1938 obtained a new certificate of title, naming Commercial as the holder of an encumbrance in the amount of $453.60. This encumbrance was satisfied on October 2, 1939 by Atlantic paying Commercial the unpaid balance due, and the latter assigned its right, title and interest in the automobile to Atlantic. As security for its loan, Atlantic took from Reuter an assignment of his certificate of title, free of encumbrances, and secured a new certificate, which it assigned to Reuter, who applied for a new certificate of title, which was issued to him on October 3, 1939 and named Atlantic as the holder of an encumbrance in the amount of $300. Reuter also executed on October 2, 1939 a bill of sale for the automobile to Atlantic, and a bailment lease of the automobile from

Atlantic, as lessor, to Reuter, as lessee, was signed by them.

The loan of $300 made by Atlantic to Reuter on October 2, 1939 was renewed on June 20, 1941, and a new lease was executed. The loan was again renewed on February 6, 1942 and another lease was entered into, and the lease of June 20, 1941 was returned to Reuter. A certificate of title was issued in the name of Harry F. Reuter, with an encumbrance noted in favor of Atlantic in the amount of $300. The certificate was delivered to Atlantic and remained in its possession.

The said *automobile at all times* remained continuously in the possession of Harry F. Reuter from the date of the first transaction with Sampson Motor Car Company on August 4, 1937 to the date of levy by the sheriff, and possession of said automobile was never given by him to First Credit Corporation, Commercial Banking Corporation or Atlantic Finance Corporation, when the before mentioned respective assignments and bailment leases were executed and the several certificates of title were issued. The certificates of title issued in the name of Harry F. Reuter were never left in his possession, but were always in the possession of the corporation holding the respective encumbrance noted in the certificate—this latter circumstance being in strict accordance with the provision in section 203(b) of the Vehicle Code as amended. See Act of June 29, 1937, P. L. 2329.

Under this state of facts the court below was clearly right in holding that, as respects the execution creditor of Harry F. Reuter, the ownership of the automobile was, since August 4, 1937, always in him and not in the alleged respective bailment lessors who really only *lent money* to Reuter and were never in actual possession of the automobile which they purported to 'lease' to him in an attempt to secure the loan. The ruling is supported by an unbroken line of cases beginning

with *Clow v. Woods,* 5 S. & R. 275, and continuing to the present.

The parties in the original sale transaction did not pursue the course adopted by the dealer in *G. M. A. C. v. Hartman,* 114 Pa. Superior Ct. 544, 174 A. 795, and upheld by us as legal. If Sampson Motor Car Company had made a bailment lease to Reuter and assigned the automobile and the lease to First Credit Corporation, which advanced the $763.92 unpaid on the car, as was done in *G. M. A. C. v. Hartman* case, the automobile would not have been subject to execution and sale by Reuter's judgment creditors until the amount yet due was paid and the automobile had fully become Reuter's property. But that course was not taken here. Instead, the parties did the very thing which, as we said in *G. M. A. C. v. Hartman,* supra (citing a long line of decisions), would subject the car to execution and sale by the buyer's creditors. The car was *sold* by Sampson Motor Car Company to Reuter and certificate of title was issued to him subject to an encumbrance in favor of First Credit Corporation in the amount of $763.92. That encumbrance was paid and satisfied on November 2, 1938. Thereafter successive loans were made to Reuter by Commercial Banking Corporation and this appellant respectively and an attempt was made by each creditor to secure the loan by having a bill of sale made to the lender, who then executed a bailment lease back to the owner, without any change of possession whatever.

We set forth on pp. 552 and 553 of *G. M. A. C. v. Hartman,* 114 Pa. Superior Ct. 544, a statement or summary of five classes of transactions, the legal effect of any of which would sustain the right of a judgment creditor to levy on the claimed property and sell it in execution as the property of the defendant. All the transactions in the present case come within either the fourth or the fifth class therein recited, to wit:

"(4) Where the lease is attempted to be made by one not in possession of the property leased—as where A sells and delivers a car to B, and the unpaid purchase money is sought to be secured by a *lease* to B from C, who never had possession of the car: Bank of Secured Savings v. Rudolph, supra [83 Pa. Superior Ct. 439] ; Commercial Banking Corp. v. Meade, supra [104 Pa. Superior Ct. 447, 159 A. 180]. See also, Bowersox v. Weigle & Myers, 77 Pa. Superior Ct. 367. (5) Where the owner of personal property borrows money on it and attempts to secure the loan by executing a bill of sale to the lender, and the latter executes a bailment lease back to the owner, without any change of possession: Root v. Republic Acceptance Corp., supra [279 Pa. 55, 123 A. 650]."

But the appellant wrongly contends that the amendment of June 27, 1939, P. L. 1135, to section 203(b) of the Vehicle Code has changed the above stated established law. The clause relied on is as follows: "The certificate of title, when issued by the secretary showing a lien or encumbrance, shall be adequate notice to the Commonwealth, creditors, and purchasers that a lien against the motor vehicle ...... exists, and failure to transfer possession of the vehicle ...... shall not invalidate said lien or encumbrance." It has no reference whatever to the *ownership* of the motor vehicle, which is what is solely in issue in this case. We said in *First National Bank of Emlenton v. Emlenton Motor Co.,* 153 Pa. Superior Ct. 404, 34 A. 2d 43, where the same clause was relied on in a sheriff's interpleader, "Notice of a lien or encumbrance"—that is, the statutory notice arising from the issuing of a certificate of title showing a lien or encumbrance—"would not warrant a claim of *ownership* by the holder of the lien or encumbrance in a sheriff's interpleader." And in *Equitable Credit Co. v. Stephany et al.,* 155 Pa. Superior Ct. 261, 38 A. 2d 412, a replevin action for an

automobile, we said: "The amending Act of June 27, 1939, P. L. 1135, does not have the effect of converting a lien or encumbrance upon a motor vehicle into ownership of it."

The words 'owner' and 'owned' and 'ownership' as used in the Sheriff's Interpleader Act of 1931, supra, with reference to the goods and chattels levied upon by the sheriff as the property of the defendant in the execution, must not be confused with the same words as used in the Motor Vehicle Code, in connection with the application for or issuance of a certificate of title as provided for in said act.

As defined in the Motor Vehicle Code (Sec. 102), 'owner' is not confined to the "person or persons holding the legal title of a vehicle," but "in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof, or other like agreement, with the right of purchase upon performance of the conditions stated in the agreement, and with an immediate right of possession vested in the conditional vendee or lessee, then such conditional vendee or lessee shall be deemed the owner for the purpose of this act." And the 'title' passed by the 'certificate of title' provided for in the Motor Vehicle Code is subject to the same qualifications of ownership, and applies also to the interest held by a conditional vendee or lessee. Whereas the words 'belong to', 'ownership', 'title', etc., as used in the Sheriff's Interpleader Act are used in their usual and ordinary understanding, as relating to the absolute ownership or proprietorship of the goods and chattels in controversy. 'Title' so used is "the union of all the elements which constitute ownership:" *Webster*. 'Owner' is, "one who has the rightful claim or title to a thing." *Shorter Oxford English Dictionary*.

Section 16 of the Sheriff's Interpleader Act, *supra,* which provides, "Nothing herein contained shall be construed to affect the rights of any lienholder other

than the plaintiffs in each execution and process herein provided for," is not applicable here. It refers to liens obtained in proceedings by distress for rent, liens for repairs, storage, etc. which existed and were in force and effect at the time the execution was issued. A person cannot own an article and at the same time have a lien upon it.

This appellant presented to the sheriff no claim of a lien on the automobile, but asserted its absolute ownership of it. To support that claim of ownership it gave its bond conditioned "that it shall at all times maintain its title to said goods and chattels claimed or pay the value thereof to the party or parties thereunto entitled," and it took the automobile and still retains it.

It wholly failed to maintain its title to the automobile and it must pay to the plaintiff in the execution its value as found by the court.

Judgment affirmed.