## Grossman et al. v. Land Title Bank and Trust Co. et al.

*A. D. Gordon*, for plaintiffs.

*J. L. Ehrenreich*, for defendants.

Bok, P. J., December 6, 1948.—This is a sheriff's interpleader action between an execution creditor (the bank) and the alleged owner of a car. The ownership asserted arises out of a bailment lease that has not yet been completed.

The sole question is whether or not the Motor Vehicle Sales Finance Act of June 28, 1947, P. L. 1110,

69 PS §601 et seq., abolishes from Pennsylvania the so-called bailment lease of automobiles and makes all such transactions conditional sales. If it does, an unrecorded instrument cannot prevent a creditor from levying successfully on the car.

The instrument involved here was not recorded but was drawn strictly in accordance with the new act, and the lessor was licensed. The lessor did not obtain a certificate of title in its own name; it reassigned to the execution debtor the certificate of title held by the person from whom the lessor bought the car. This failure to get a certificate did not prevent the lessor from asserting ownership. In Majors v. Majors et al., 349 Pa. 334 (1944), the court said of the Motor Vehicle Code, which governs certificates of title:

"The primary purpose of the Act was not designed to establish the ownership or proprietorship of an automobile, but rather to register the name and address of the person having the right of possession, and to furnish persons dealing with one in possession of an automobile a means of determining whether such possession was prima facie lawful."

See also Herring v. Shullo et al., 149 Pa. Superior Ct. 345 (1942), and Braham & Co. v. Steinard-Hannon Motor Co. et al., 97 Pa. Superior Ct. 19 (1929).

Nor does the failure to have the lease noted as an encumbrance on the certificate of title affect the lessor's ownership: Atlantic Finance Corp. v. Kester et al., 156 Pa. Superior Ct. 128 (1944).

There is nothing in the Act of 1947 that shows a legislative intention to abolish bailment leases. There is no statement one way or the other about it in the Legislative Journal, and the declarations of policy contained in section 2 of the act shows a clear intention to protect the buyers of cars against flagrant and widespread abuses. In paragraph (b) of this section the "Pennsylvania Bailment Lease" contract is specifically

mentioned, and it is even called a "fictional instrument" and "alleged bailment". Nowhere, however, is it expressly outlawed. To the contrary, it is included in item 10 of section 3, under "definitions", which reads as follows:

"10. 'Installment sale contract' or 'contract' shall mean any contract for the retail sale of a motor vehicle, or which has a similar purpose or effect under which part or all of the price is payable in two or more scheduled payments subsequent to the making of such contract, or as to which the obligor undertakes to make two or more scheduled payments or deposits that can be used to pay part or all of the purchase price, whether or not the seller has retained a security interest in such motor vehicle or has taken collateral security for the buyer's obligation, and shall include any loan, any mortgage, *any conditional sale contract*, any purchase-money chattel mortgage, *any hire-purchase agreement or any contract for the bailment or leasing of a motor vehicle* under which the hire-purchaser, the bailee or lessee contracts to pay as compensation a sum substantially equivalent to or in excess of the value of the motor vehicle and any other form of contract which has a similer purpose or effect . . ." (Italics supplied.)

Two things are highly significant about this definition. One is that the term defined is "installment sale contract or contract", an all-inclusive term. The second is that this term includes not only "any conditional sale contract" but "any hire-purchase agreement or any contract for the bailment or leasing of a motor vehicle."

In section 35, the act provides that no obligation of the buyer under such contract shall be enforcible when the seller is not licensed, and that the buyer shall be entitled to have the contract cancelled and all liens released upon tendering the amount due.

The obvious purpose of the act is to protect the buyer against selling and financing abuses and to require the

246

regulation of selling practices by licensing restrictions. The act does not even aim at any relationship that may exist between the buyer and other creditors.

That the act has incorporated several sections verbatim from the Conditional Sales Act is of no moment. Conditional sales are expressly included, and the machinery for regulating them happens to be effective enough to warrant its use for the purpose of this act. That does not mean that bailment leases are now conditional sales. The act proclaims itself to be an exercise of the Commonwealth's police power, which indicates a desire to regulate existing practices rather than to abolish legal relationships.

In General Motors Acceptance Corporation v. Hartman et al., 114 Pa. Superior Ct. 544 (1934), the court said (pages 549, 554):

"The enactment of the Conditional Sales Act of May 12, 1925, P. L. 603, did not affect our established law on this subject, for the provisions of the Uniform Conditional Sales Act in force in other states were changed, in our statute, so as to permit the continuance in force of our law. . . . The method adopted in this case has long been recognized as valid and legal in this state."

The exceptions are dismissed.