PERSONAL AUTO FINANCE COMPANY *v.* GRACE E. BOVE

MALTBIE, C. J., BROWN, JENNINGS, ELLS and CORNELL, JS.

Argued February 3—decided April 26, 1949.

*William L. Beers* and *Ellwood D. Shimer,* of the Pennsylvania bar, with whom, on the brief, was *J. J. Henry Muller, III,* for the appellant (plaintiff).

*Anthony A. E. DeLucia,* with whom, on the brief, was *Anthony E. Bove,* for the appellee (defendant).

MALTBIE, C. J.   In this action of replevin to obtain an automobile in the possession of the defendant, judgment was rendered for the defendant and the plaintiff has appealed.   The issue is: Did the plaintiff have such title to and right of possession of the car that it was entitled to recover it from the defendant?

The transactions involving the car will not be traced in full.   Unquestioned findings of the court are as follows: In April, 1945, the defendant, her mother and sister were living in Pennsylvania.   They gave to George A. Ziegler a check for $345.50 on his promise that he would try to get a car for them.   In June he purchased the car in question from William B. Cass and registered it in a trade name.   In the same month he delivered it to the three women.   They operated it under its registration in the trade name.   They requested him several times to execute the papers neces-

sary for its transfer to them, and he promised to do so but never did. In March, 1946, the defendant brought the car to Connecticut, where she now resides with her husband; on June 22, 1946, she registered it in this state in her name; and it was in her custody in this state until the action was brought. On June 17, 1946, Ziegler executed papers purporting to transfer title to the car to Mary Balsaj. On August 30, 1946, she transferred title to the car back to him and he then executed a "lease agreement" in which Cass was named as the lessor. Cass made an assignment of his rights under the agreement to the plaintiff. The department of revenue of Pennsylvania issued a certificate that title to the car was in Ziegler and that it was subject to an incumbrance in favor of the plaintiff. In September, 1946, the plaintiff assigned its rights to the Liberty Bank and Trust Company. The bank never made a written reassignment to the plaintiff. The plaintiff asks to have an addition made to the finding to the effect that the bank did make such a reassignment by delivery of the papers, without writing, but such a finding would be immaterial as regards the issue upon which we decide the case.

The only right to the car which the plaintiff asserts is such as under the laws of Pennsylvania was created by the "lease agreement" between Ziegler and Cass, under the assignment of which the plaintiff claims. The intent and effect of that agreement sufficiently appear from the following provisions: It named Cass as lessor and Ziegler as lessee; it recited that the lessor "this day delivered" the car in question to Ziegler and leased it to him upon the terms and rental specified; it then gave certain sums as the "Cash Delivered Price," together with charges, the "Rental Paid (Cash)" and the "Balance in 12 equal monthly Rentals of $61.43 . . . Evidenced by one Promissory Note

of this date bearing interest from maturity at highest lawful rate"; at the expiration of the lease the lessee agreed to surrender the car to the lessor, and it was expressly understood that no title to the car, legal or equitable, should vest in the lessee except as lessee; the lessee was forbidden to underlet or dispose of the machine or assign the lease; title to the car was in and should remain vested in the lessor; if the lessee failed to pay the rentals or broke any of the covenants contained in the agreement, he was on demand of the lessor to deliver the car to the latter; if he failed to do so, the lessor had the right without notice or demand to terminate the lease and take possession of the car wherever found; should the lessor retake the machine, he might sell or transfer title to it and, at his option, credit the amount received upon any sums due from the lessee. The assignment from Cass to the plaintiff was to the effect that the former "hereby sells, assigns, transfers and sets over" to the latter "the within contract and all right, title and interest in and to" the car "and all rights and remedies under said contract, and either in assignee's own behalf, or in undersigned's name take all such legal proceedings or otherwise, as undersigned might have taken, save for this assignment."

The plaintiff in effect concedes that under the law of Pennsylvania, as it was before the motor vehicle code was amended in 1939, it had no right to recover the car, citing *Ambler National Bank* v. *Maryland Credit Finance Co.*, 147 Pa. Super. 496, 24 A. 2d 123. In that case the court had before it a document which it briefly described (p. 499) as a "bailment lease," in which the plaintiff was named as bailor, and the owner of the car, Schwenk, as bailee, and which provided for "installment payments to be made by" the bailee "on account of a loan." Later a similar agree-

ment was made by Schwenk and the defendant in the case. The court said (p. 502): "The transactions both between the plaintiff and Schwenk, and between the defendant and Schwenk, amounted to unexecuted pledges of the automobile as security for Schwenk's loans. It is obvious that the form of the agreement, to wit, a bailment lease, did not create the relationship of bailor and bailee in either case as neither the plaintiff nor the defendant had title to or possession of the car at the time the agreement was entered into. On the other hand, it is quite as obvious that both the plaintiff and the defendant entered into bonafide agreements to lend Schwenk money on the security of this automobile. Both agreements amounted to a pledge of the car, ineffectual as against creditors, bonafide purchasers or subsequent pledgees because of the failure to deliver possession." In *First National Bank of Jamestown* v. *Sheldon,* 161 Pa. Super. 265, 269, 54 A. 2d 61, the court quoted with approval a statement in the *Ambler* case (p. 502) that "Under the common law it is essential to the validity of a pledge of personal property that either actual or constructive possession of the pledged property be delivered to the pledgees."

The 1939 amendment to the motor vehicle code on which the plaintiff relies provides: "The certificate of title, when issued by the secretary showing a lien or encumbrance, shall be adequate notice to the Commonwealth, creditors, and purchasers that a lien against the motor vehicle, trailer or semi-trailer exists, and failure to transfer possession of the vehicle, trailer or semi-trailer shall not invalidate said lien or encumbrance." Pa. Stat. Ann. (Purdon, Sup. 1948) Tit. 75, § 33. The effect of this amendment as regards the validity of pledges or chattel mortgages of automobiles where possession has not been given to the pledgee or mortgagee was before the Pennsylvania Superior

Court in *Equitable Credit Co.* v. *Stephany,* 155 Pa. Super. 261, 38 A. 2d 412. The plaintiff, a loan company, brought an action of replevin to recover certain cars, title to and possession of which it had never had, and its only right to which was under a bailment lease apparently in like terms to that involved in the *Ambler* case. Referring to the act of 1939, the lower court had said (p. 264): "It may have been the intention of the Legislature to protect by this Act those who loan money on automobiles on the security of fictional bailments but the Act fails to do so and while we should construe legislation, if possible, to accomplish the legislative intent, we can not re-write it or add provisions which are not there. The Act provides that the notation on the certificate of title shall be notice to creditors of a 'lien against the motor vehicle.' It does not say that such notation gives notice of or creates any ownership or right of possession in the creditor named." In affirming that decision, the Superior Court held (p. 265) that the act of 1939 "does not have the effect of converting a lien or encumbrance upon a motor vehicle into ownership of it, or carry with it such right of possession as will sustain an action of replevin"; and it sustained a judgment for the defendants. See *Atlantic Finance Corporation* v. *Kester,* 156 Pa. Super. 128, 134, 39 A. 2d 740; *In re Bair,* 49 F. Sup. 56, 59.

In *Commonwealth* v. *Lombardo,* 356 Pa. 597, 607, 608, 52 A. 2d 657, the lower court in its opinion had repeated in substance the quotations we have given from the *Ambler* and *Equitable Credit Co.* cases, and the Supreme Court affirmed the judgment upon that opinion. This seems to us to obviate the doubt expressed in *In re Berlin,* 54 F. Sup. 416, 418, that the decisions of the Pennsylvania Superior Court may be taken as conclusive of the law of that state, if indeed

that doubt had a reasonable basis. See *Fidelity Union Trust Co.* v. *Field*, 311 U. S. 169, 177, 61 S. Ct. 176, 85 L. Ed. 109; *Taplinger* v. *Northwestern National Bank*, 101 F. 2d 274, 278. In *In re Berlin*, 147 F. 2d 491, the question was whether a finance company holding a bailment lease on certain cars in the possession of a trustee in bankruptcy had a valid claim against the estate; the court treated the lease as giving rise to a lien and held that under the statute we have quoted the company did have a valid claim against the bankrupt estate; but no question whether the lease gave the company title to or the right to possession of the cars was presented. As we read the Pennsyvania decisions, such a bailment lease as was considered in them gave the lessor no such title or right as it could assert against a person not a party to the agreement unless it had possession of the car when the lease was executed or possession was delivered to it under the lease.

In *Root* v. *Republic Acceptance Corporation*, 279 Pa. 55, 123 A. 650, the defendant claimed title to certain automobiles; a sales company had purchased the cars and to finance the transaction had borrowed money from the defendant and given to it bills of sale and storage receipts, and at the same time it received from the defendant a bailment lease of the cars, but no change in possession ever took place. The court said (pp. 57, 58): "The complicated dealings between many of those trafficking in and loaning money on automobiles has reached a point where the courts must strip transactions of their pretences and look at them as they really are, with the camouflage of papers giving a similitude of the passing of title removed, or they will be dealing with fictions instead of facts. Those who buy and sell, bail and loan money on motor vehicles must be given to understand that the realities of their transactions will be sought for by the courts;

they will look through the screen of paper titles to ascertain what was the real situation . . . . However much appellant desired and endeavored to disguise the transaction between it and the Averill Company by the dressing of the papers which were executed,—the bill of sale, the storage receipt and the bailment lease,—the real transaction, so far as third persons were concerned, was that of a loan by defendant to the Averill Company and the actual relation between them was not that of bailor and bailee but debtor and creditor."

The opinions in the cases we have cited do not give the provisions of the "bailment leases" referred to in them. They are somewhat summarized, however, in *H. L. Braham & Co.* v. *Surrell*, 115 Pa. Super. 365, 368, 176 A. 64, and in essential details they seem to have been like the "lease agreement" now before us. However that may be, in this case neither Cass nor the plaintiff had possession of the car at the time the "lease agreement" was made; in fact, the car had been brought to Connecticut some five months before the lease was made. There can be no question that the purpose of the lease was merely to afford security for money advanced. Under the law of Pennsylvania, the plaintiff established no title or right to the possession of the car which would permit it to prevail in this replevin action.

After the conclusion of the trial, the plaintiff made a motion that it be permitted to introduce further testimony or be granted a new trial. The motion recited that at the time of the trial Ziegler could not be found but he had been located, and it was desired to produce his testimony before the court; and to the motion was annexed a sworn statement of the evidence he would give. The only portion of that statement at all relevant to the issues we have been discussing was that

when the "lease agreement" was executed with "the Personal Auto Finance Company, i. e. William B. Cass," Ziegler had possession of the car and it was "inspected by agents of William B. Cass at his place of business." A mere inspection of the car would fall far short of showing such possession of it by Cass or the plaintiff as would meet the requirements of the principle we have discussed. *Callahan* v. *Union Trust Co. of Pittsburgh,* 315 Pa. 274, 276, 172 A. 684. The trial court did not err in denying the motion on the ground that Ziegler's testimony would not affect the result.

It is not necessary to consider whether, as the defendant claims, the plaintiff, by assigning its rights to the Liberty Bank, was precluded from maintaining this action.

There is no error.

In this opinion the other judges concurred.