**FREEDOM NAT. BANK v. NORTHERN ILLINOIS CORP.**

No. 10648.

United States Court of Appeals Seventh Circuit.

March 17, 1953.

Rehearing Denied April 15, 1953.

Seymour M. Lewis and Arthur L. Israel, Chicago, Ill., Meyer J. Myer, Chicago, Ill., for appellant.

Howard Ellis, William H. Symmes, Jr., and John M. O'Connor, Jr., Chicago, Ill., J. Vincent Burke, Jr., Pittsburgh, Pa., Kirkland, Fleming, Green, Martin & Ellis, Chicago, Ill., and Campbell, Houck & Thomas, Pittsburgh, Pa., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The principal proposition presented by this appeal questions the validity of a Pennsylvania bailment lease agreement in which the plaintiff, Freedom National Bank of Freedom, Pennsylvania, or Trailmobile Trailer Company of Pittsburgh, Pennsylvania, were named as lessors and A. D. Marsh of Beaver Falls, Pennsylvania, was named as lessee.

There was sufficient evidence to support the following Findings of Fact. The bailment lease covered a Trailmobile trailer which, at the time of the execution of the bailment lease, was owned by, and in the possession of, the Trailmobile Trailer Company. The bailment lease contract was on the printed form of the Freedom National Bank and was executed by A. D. Marsh in the office of said bank on March 15, 1947. The contract provided for a total rental of $5,668.44, payable $815.28 on or before delivery of the trailer, and the balance in 36 equal monthly instalments of $134.81. The total rental covered insurance on the trailer and carrying charges in addition to the cash price of the trailer which was $4,309.15. The plaintiff bank, on being assured by the Trailmobile Company that it would assign said bailment lease contract to the bank, issued its check for $3,288.40 to the Trailmobile Company, instructing that company to place an encumbrance on the title of the trailer in favor of the bank.

On receipt of the check from the plaintiff bank the Trailmobile Company delivered possession of the trailer to Marsh and made an application for a Pennsylvania certificate of title, showing Marsh as the "owner" of the trailer subject to an encumbrance of $3,288.40 in favor of the plaintiff bank. This certificate of title, pursuant to the provisions of the Pennsylvania Motor Vehicle Code, was sent to, and is still held by, the plaintiff bank as holder of the encumbrance. The Trailmobile Company, on receipt of the plaintiff's check, also assigned all of its interest in the bailment lease contract to said bank.

Marsh defaulted on his payments on the contract, paying a total of only $520.06, the last payment having been made on March 14, 1947. After the last payment by Marsh there remained a balance due of $4,333.10, which has never since been paid. After Marsh defaulted in his payments the plaintiff bank made repeated demands on him either to return the trailer or to pay the balance due under the contract. In November 1947, Marsh agreed to return the trailer to the bank upon his return from Illinois, where the trailer was then parked. This promise Marsh failed to keep.

On January 2, 1948, Marsh, in order to purchase a Brockway tractor from C. Bartels, doing business as Bartels Motor Sales Co. of Hinckley, Illinois, executed an Illinois conditional sales contract which provided for the purchase of a Brockway tractor. Marsh agreed to include in the conditional sales contract, in lieu of a down payment on the contract, a Fruehauf van trailer which he then owned subject to an encumbrance in favor of the Mellon National Bank of Butler, Pennsylvania. The Bartels Motor Sales Co. paid the encumbrance on the Fruehauf trailer and received a Pennsylvania certificate of title thereto. Bartels did not demand, and was not given, any certificate of title to the Trailmobile trailer. Marsh executed a conditional sales contract in blank and left it with the Bartels Motor Sales Co. When this conditional sales contract was completed it included the Trailmobile trailer as well as the Brockway tractor and the Fruehauf trailer.

In July 1948, the defendant, Northern Illinois Corporation, a finance company to which Bartels had assigned the conditional sales contract between him and Marsh, repossessed the equipment covered by the conditional sales contract, including the Trailmobile trailer. At the time of this repossession Marsh advised the Northern Illinois Corporation that the Trailmobile trailer was the property of the Freedom National Bank under the bailment lease contract which he had signed with that bank on March 15, 1947.

On July 31, 1948, the Northern Illinois Corporation, under the provisions of the

conditional sales contract, sold the Trailmobile trailer to one R. Delridge, an agent of the Northern Illinois Corporation. Thereafter, on August 14, 1948, the Northern Illinois Corporation redelivered the Trailmobile trailer to Bartels under a trust receipt which listed the value placed on the Trailmobile trailer as $4,000.

Thereupon the plaintiff, learning that the Northern Illinois Corporation had taken the Trailmobile trailer from Marsh, made demand upon that corporation for the balance due under the bailment lease contract and, upon the refusal of Northern Illinois Corporation to pay the balance due or to return the trailer, instituted this action for conversion.

On these facts the trial court concluded that the bailment lease contract under which Marsh was given possession of the Trailmobile trailer was a valid contract under the laws of Pennsylvania; that by the assignment of the contract from the Trailmobile Trailer Company to the Freedom National Bank, the bank became, and still is, the owner of the Trailmobile trailer; that the Trailmobile Company and the plaintiff bank had complied with all of the requirements of the Pennsylvania Vehicle Code of 1929, as amended, 75 P.S. § 1 et seq., by having noted on the certificate of title issued to Marsh an encumbrance of $3,288.40 in favor of the plaintiff bank; and that, under the terms of the bailment lease contract of which the plaintiff bank is the assignee, the title to the Trailmobile trailer remained in the plaintiff bank, and upon the default by Marsh in making the payments on said contract, the bank became entitled to immediate possession of this trailer.

The trial court further concluded that the conditional sales contract between Marsh and Bartels Motor Sales Co. was void as to the Trailmobile trailer because title to that trailer was never in Marsh or the Bartels Company but instead was, and still is, in the Freedom National Bank; that the notation on the Trailmobile trailer certificate of title was notice to the Bartels Company and to the defendant of the interest of the plaintiff bank in said trailer; and that the taking of the Trailmobile trailer by the defendant, when the title to the trailer and the right to immediate possession thereof was in the plaintiff bank, was a conversion thereof by the defendant, making the defendant liable for the value of the said trailer at the time of its conversion.

The defendant admits that Pennsylvania courts recognize the validity of bailment leases even as against subsequent purchasers provided that the transaction giving rise to the instrument is a true bailment. But, the defendant contends that the bailment lease here was invalid as against creditors because the entire transaction amounted to a completed sale to Marsh by the Trailmobile Trailer Company, and the bailment lease was executed only as security for the payment of the balance of the purchase price.

█ We think the District Court properly found against the defendant on this question. In this case Marsh, the prospective buyer, executed the bailment lease while the trailer was still in the possession of and owned by the Trailmobile Company. In that lease it was expressly agreed that title to the trailer should remain in the Trailmobile Company throughout the life of the lease and that the trailer should then be returned to the Trailmobile Company. The lease further provided that, in the event of the trailer's being returned to the lessor at the expiration of the term of the lease, the bailee might then buy the trailer for a nominal consideration. Prior to that time the lease gave Marsh only the right to possession and gave him that right only so long as he complied with all of the terms of the lease. Under the terms of this bailment lease Marsh's failure to make the rental payments cancelled his rights of possession and immediately transferred the right of possession to the bailor.

Under such a state of facts the Pennsylvania courts have held that such a bailment lease is valid even as against subsequent creditors. General Motors Acceptance Corp. v. Hartman, 114 Pa.Super. 544, 174 A. 795. In that case Hartman, the prospective buyer, wanted to buy an Oldsmobile automobile, but, not having sufficient cash, he executed with the dealer a bailment

lease and paid the amount of cash he had as advance rental. The possession of the automobile was then given to Hartman and the bailment lease was assigned by the dealer to General Motors Acceptance Corporation. In holding that the title of General Motors Acceptance Corporation was valid as against subsequent creditors, the court said, 174 A. 797:

> "A bailment lease has long been an approved and legal method, in force in this commonwealth, by which one desiring to purchase an article of personal property, but unable to pay for it at the time, may secure possession of it, with the right to use and enjoy it as long as he pays the stipulated 'rental,' and the further right to become the absolute owner, on completing the installment payments called for in the lease, by payment of an additional sum, which may be nominal in amount."

In the Hartman opinion the court pointed out, 174 A. at page 797, that the transaction was not affected by the fact that the dealer or its bookkeeper described the transaction on the company's books as a "sale" and the bailment lease as a "bill receivable," nor by the forms used in securing the necessary certificate of title from the Department of Revenue. On this latter point the court explained that the forms were prepared and furnished by the Department of Revenue, and the court said, 174 A. at page 798:

> "The Act of 1929 [75 P.S. § 2] defines 'owner' as including the 'lessee' under a lease (p. 909); and the Act of 1931 (75 P.S. § 32) substitutes 'applicant' for 'owner' as the person to apply for the certificate. Any money due under the contract, whether lease or conditional sale, is termed a lien or incumbrance in the application as prepared by the Department of Revenue. The purpose of such a certificate has been stated by us in Braham & Co. v. Steinard-Hannon Motor Co., 97 Pa. Super. 19. It has no effect on the contract executed between the parties."

The defendant in the instant case also claimed that it relied on a unit invoice furnished to Marsh by the Trailmobile Company at the time it delivered the trailer to him. The unit invoice, on a form of the Trailmobile Company, showed a description of the trailer, indicated it was to be charged to Marsh, described the terms of the transaction as "cash," and was stamped "Paid" on the date the trailer was delivered to Marsh. The total price shown on the invoice was $3,288.40, the balance of the cash purchase price after the cash payment made by Marsh. In the Hartman case, p. 798, the court held that a similar descriptive memorandum could not change the transaction from a bailment lease to a conditional sale.

In a later case, Atlantic Finance Corp. v. Kester, 1944, 156 Pa.Super. 128, 39 A.2d 740, the court held invalid, as against creditors, a bailment lease made by bailment lessors who were never in actual possession of the automobile which they purported to "lease" to Reuter, the lessee, in an attempt to secure a loan to the lessee. The court there pointed out, however, 39 A.2d at page 742, that if the dealer had made a bailment lease to Reuter and had assigned the automobile and the lease to the finance company which had advanced the balance unpaid on the car, as was done in General Motors Acceptance Corp. v. Hartman, 174 A. 795, and as was done in the instant case, " * * * the automobile would not have been subject to execution and sale by Reuter's [the buyer's] judgment creditors until the amount yet due was paid and the automobile had fully become Reuter's property."

In Commercial Investment Trust Co. v. Minon, 3 Cir., 104 F.2d 765, Judge Maris of that court made an exhaustive and careful review and analysis of the Pennsylvania cases on the validity of bailment leases. He concluded, 104 F.2d at page 769, that where, as in the Hartman case and as in the instant case, possession of a chattel is given upon the signing of a bailment lease, valid in form, and the parties have not already made and completed a conditional sale of the chattel which is the subject of the bailment lease, " * * * the contract will be sustained at its face value and in accordance with its form as a bailment even

though the original intention of the parties was to make a deferred payment sale and their present intention is that title shall pass to the vendee on compliance with the conditions of the lease." After admitting that in many cases it is difficult to draw the dividing line between valid and invalid bailment leases, in such cases Judge Maris said, 104 F.2d at page 769:

"It is clear, however, that on the one side [the valid leases] are those transactions in which preliminary negotiations and oral understandings with regard to the proposed conditional sale of a chattel have resulted in the signing of a bailment lease of it by the owner and the intending purchaser *under and subsequent to which possession of the chattel is transferred* by the former to the latter." (Our emphasis.)

While such a holding may seem severe on Bartels and his assignee, the defendant in this case, all of the facts concerning the Trailmobile trailer could have been ascertained by Bartels and the defendant. Bartels knew that Marsh was a resident of Pennsylvania. He knew that Marsh had procured the Trailmobile trailer from the Trailmobile Company in Pittsburgh. He knew that Marsh had been required to procure a certificate of title for the trailer in Pennsylvania and that the certificate of title would show any lien or encumbrance against the trailer. Bartels had paid off the encumbrance on the Fruehauf trailer, which was included in the same conditional sales transaction as the Trailmobile trailer, and had secured the Pennsylvania certificate of title on it. The certificate of title procured by Marsh on the Trailmobile trailer, pursuant to the Vehicle Code of Pennsylvania, was delivered to the plaintiff bank and showed the encumbrance in favor of the bank. Under the Pennsylvania statutes, the notation of the encumbrance to the bank was notice to Bartels and to the defendant of the encumbrance which the plaintiff held. If Bartels had required Marsh to furnish the certificate of title for the Trailmobile trailer, he would have learned that the plaintiff not only held title to the trailer but that the plaintiff also had the right to immediate possession. The fact that Bartels, a dealer in used motor vehicles, failed to demand a certificate of title for the Trailmobile trailer is difficult to understand and lends credence to Marsh's testimony that the Trailmobile trailer was included in the Bartels conditional sales contract without Marsh's knowledge or consent.

■ The defendant also attacks the finding and conclusion of the trial court that the value of the trailer at the time of its conversion was $4,000. In the court's conclusion of law immediately following this conclusion of value, the trial court said that the defendant was estopped from disputing the valuation of $4,000, "since the defendant has placed that valuation on said trailer in the bill of sale and trust receipt between itself and the Bartels Motor Sales." We agree with the defendant that the notation of that figure opposite the description of the trailer on the bill of sale did not estop the defendant from showing a different value, although the statement might have been considered by the court as an admission by the defendant. But an examination of the pleadings reveals the fact that in its answer to the complaint the defendant expressly admitted the allegation of the complaint that on August 2, 1948, several months after the conversion, the Trailmobile trailer was valued at $4,000. And to the allegation of the complaint that at the time of the conversion, in January 1948, the value of the trailer exceeded $4,718.25, the defendant in its answer denied only that the value at that time *exceeded* that sum. By denying that the value of the trailer at that time exceeded that sum, the defendant impliedly admitted that the value then equalled the sum of $4,718.25.

■ That which a defendant admits in his answer is binding upon him until he withdraws the admission by a proper amended or supplemental pleading. No such amended or supplemental pleading was filed by the defendant in this case. The plaintiff, therefore, had the right to rely on the defendant's admission of value and was under no duty to adduce evidence to prove the $4,000 valuation found by the court. United States ex rel. and for Use and Ben-

efit of Stanley v. Wimbish, 4 Cir., 154 F.2d 773, 774.

The defendant also contends that the trial court erred in overruling defendant's motion for a finding in its favor at the close of plaintiff's case. The ground for that motion on which the defendant relies is that the plaintiff at that time had presented no evidence of the value of the trailer at the time of the conversion. But, as said in Fontes v. Porter, 9 Cir., 156 F.2d 956, 957: "Neither proof nor finding is requisite in respect of uncontested issues." It may also be pointed out, however, that even if the defendant had grounded its motion on a proper cause, it waived the right to assign as error the court's ruling on that motion by proceeding with the case and introducing its evidence. United States v. Martin, 10 Cir., 80 F.2d 460, 462.

Finding no error, the judgment of the District Court is affirmed.